FILED
CLERK, U.S. DISTRICT COURT

2/10/25

CENTRAL DISTRICT OF CALIFORNIA
BY_____MRV_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Pro se litigant Sharrod Moten F-36382
Kern Valley State Prison A-4  Cell # 109
Post Office Box 5101
Delano CA 93216-6000.

February 10th , 2025

UNITED STATES DISTRICT COURT

IN THE CENTRAL DISTRICT OF CALIFORNIA

Sharrod Moten,

**Plaintiff,**

vs.

L.A. District Attorney's Office & Teresa P Magno, & Curtiss Fullerton DA.

**Defendant**

Case No.   2:25-cv-01179-DOC-SP

**(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**The actions perpetrated against me reflect a calculated, multifaceted scheme rife with constitutional violations, evidencing a gross deprivation of rights under color of law. These violations, rooted in deliberate indifference and malice, constitute a systemic affront to the Equal Protection Clause and the Fifth Amendment's guarantee of due process. The pattern of fraud, conspiracy, malicious prosecution, negligence, false imprisonment, intentional misconduct, and reckless behavior, anchored in acts of actual malice, reveal a blatant disregard for the fundamental principles of justice.**

**Moreover, the pervasive abuse of process, & abuse of power, underscored by hate crimes pursuant to Penal Code sections 422.6, 422.7, 422.55 and 422.56, further illuminates the malicious prosecution and conspiracy to subvert my rights under both state and federal law. The calculated nature of these actions, including negligence and deliberate indifference, amounts to cruel and unusual punishment in violation of the Eighth Amendment. Compounding these violations is the overarching conspiracy to obstruct justice through PC 118 violations and systemic suppression of my First Amendment freedoms, ensuring my voice remains silenced.**

1
2
3       Such reckless disregard for legal safeguards represents not only a grave miscarriage
        of justice but also a brazen affront to the foundational tenets of equality, fairness, and
        the rule of law.

4
5                                        **INTRODUCTION**

6       1. **It is inconceivable that the state & District  attorney's office, in its persistent**
7          **disregard for the constitutional principles it is sworn to uphold, would so**
8          **blatantly expose itself to liability by orchestrating a civil conspiracy of this**
9          **magnitude. The brazen imposition of four illegal sentencing enhancements,**
10         **totaling an unconscionable 55 years for what is categorically an alleged cell**
           **phone robbery, stands as a glaring indictment of prosecutorial overreach and**
11         **judicial malfeasance, as well as a flagrant violation of the Eighth Amendment's**
12         **prohibition against cruel and unusual punishment, your honor.**

13      2. **To contextualize the egregiousness of this disparity, one need look no further**
14         **than People v. Brock Turner (2016), where Turner, convicted of a heinous sexual**
15         **assault, served a mere 6 months, an outcome so lenient it sparked national**
16         **outrage. Furthermore, in State v. Mary Winkler (Tennessee, 2007), Winkler,**
17         **convicted of voluntary manslaughter for killing her husband, served just 67**
           **days before release. Similarly, in People v. Esteban Núñez, a defendant**
18         **convicted of manslaughter served only 7 years following gubernatorial**
19         **intervention.**

20      3. **And yet here I stand, sentenced to 55 years, a sentence exceeding even that**
21         **imposed in State v. Devin Chandler, where a conviction for double murder**
22         **resulted in a term less severe than mine. Such glaring discrepancies, rooted in**
23         **systemic bias and disparate treatment, scream of racial prejudice and a**
           **calculated effort to impose excessive punishment as a means of retribution.**

24
25
26
27

4.  It is as though the District Attorney's Office, in its unbridled pursuit of securing a wrongful conviction, has fashioned a scenario so overtly egregious that it practically invites scrutiny and compels litigation. This orchestrated imbalance cannot be viewed as mere coincidence but instead as part of a deliberate scheme, one that highlights the state's willful negligence, racial bias, and malicious intent to deprive me of my fundamental rights under the law.

5.  Plaintiff Sharrod Moten, Pro se litigating, brings this action against Defendants, the Superior Court of California, County of Los Angeles (Compton Courthouse), L.A.'s District Attorney's Office, Judge Theresa P. Magno, DA Mr. Fullerton, and J Flores Judges Assistant.

6.  Your Honor, Superior Court judges bear a profound and solemn duty to uphold the integrity of the judiciary by adhering strictly to the rules governing court procedures and the administration of justice. This obligation is not discretionary, nor is it subject to the personal biases or prejudices of those entrusted with such authority. Yet, Judge Teresa P. Magno have violated this fundamental duty, allowing her roles as supposed neutral arbiters to be tainted by her self-imposed positions as vigilantes on gang violence, your honor. This bias directly contravenes Canon 3C of the Code of Judicial Conduct, which mandates that judges avoid the appearance of impropriety and personal conflicts of interest, and 28 U.S.C. § 455, which compels disqualification where impartiality is reasonably questioned, furthermore AB-256. Their conduct, rooted in personal agendas, has undermined the constitutional guarantees of fairness and impartiality, and such actions cannot be tolerated within the framework of justice.

7.  Furthermore, her disregard for established legal precedents, such as Faretta v. California (1975), has exacerbated these violations. This landmark case affirms an individual's constitutional right to self-representation in criminal proceedings, a right that transcends mere procedural formalities.

8. **Judge Magno have repeatedly obstructed my ability to represent myself, imposing unjustifiable barriers that directly infringe upon my Sixth Amendment rights. Additionally, her refusal to honor my right to personal appearance, as enshrined in California Rules of Court 3.670 and 3.672 and Penal Code § 977, further violates my due process rights and my fundamental right to confront witnesses against me, your honor.**

9. **A district attorney holds the profound responsibility of serving as both the guardian of justice and the protector of the public trust. This role demands an unwavering commitment to impartiality, ethical conduct, and the rigorous pursuit of truth, a standard fundamentally undermined in this instance, as exculpatory evidence, including affidavits filed under XSCTA108752-01, clearly demonstrates. Your Honor, judicial notice must be taken of the illegal enhancements and malicious prosecution that have been employed to falsely imprison me, in direct contravention of Penal Code sections 654, 1172.75, 1170.1(f) and (g), and 12022.7.**

10. **The district attorney, as an agent of the law, is not merely an advocate for convictions but a steward of fairness, duty-bound to pursue justice without prejudice or favor, a standard blatantly disregarded in both cases XSCTA108752-01 and 23-cv-08737. The obligation to meticulously evaluate evidence, safeguard the constitutional rights of the accused, and exercise prosecutorial discretion with integrity has been alienated by the actions of Deputy District Attorney Theresa P. Magno, Patrick E. Connolly, DA Curtiss Fullerton, and others, who have succumbed to bias, external pressures, and personal ambition, your honor. To act in such a manner is to betray their solemn oath and erode the public's trust in the judiciary. Someone must intervene to restore the integrity of this process, Your Honor, as the pattern of misconduct here cannot be allowed to stand unchallenged.** These violations are not isolated lapses; they reflect a sustained pattern of deliberate malfeasance, reckless disregard, negligence, malicious prosecution, and actual malice, fraud, abuse of power / process, undermining the legitimacy of these proceedings since May 2023.

11. When judges deviate from their obligations, whether through bias, procedural deviation, or deliberate abuse of authority, the repercussions extend beyond the immediate case, shaking public confidence in the judicial system itself, your honor.

12. The restriction of my self-representation rights and denial of procedural safeguards not only taint the fairness of these proceedings but also constitute grounds for appellate reversal and potential judicial discipline.

13. Your Honor, under the sanctity of the First and Fourth Amendments, Judge Teresa P. Magno has egregiously overstepped the bounds of judicial propriety, violating my fundamental rights as enshrined in the Constitution 6 different times.

14. By unlawfully detaining me without probable cause, she has trampled upon the Fourth Amendment's guarantee against unreasonable seizures, transforming the presumption of innocence into an outright denial of liberty.

15. Moreover, her actions constitute a blatant affront to my First, Fifth, 8th & 14th Amendment rights, as the continued incarceration serves not as a measure of justice, but as a calculated act of intimidation aimed at deterring my lawful participation in civil actions. This pattern of judicial misconduct not only undermines the integrity of the judiciary but actively perpetuates a chilling effect on my right to seek redress and expose systemic wrongdoing. Your Honor, such actions demand judicial scrutiny, as the deliberate suppression of constitutional protections erodes the foundation of justice itself.

## II. JURISDICTION AND VENUE .

1. **This Court's jurisdiction is firmly established under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises from violations of the Constitution and federal laws, including 42 U.S.C. §§ 1983, 1985, and 1986, as well as Section 1331 confers original jurisdiction over claims arising under federal law, ensuring that federal courts remain the proper forum for addressing deprivations of constitutional rights and statutory violations. Sections 1343(a)(3) and (4) specifically empower this Court to redress the deprivation of civil rights secured by the Constitution and federal statutes, underscoring the gravity of claims alleging government misconduct, conspiracy to deny equal protection, and neglect in preventing such deprivations.**

2. **Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to my claims occurred in this district.**

3. **Federal tort jurisdiction in federal courts refers to the authority of federal courts to hear and decide cases involving tort claims under certain conditions. Generally, federal courts have jurisdiction over tort cases in the following circumstances:**

4. **Federal Question Jurisdiction: This occurs when the tort claim arises under federal law. For instance, claims involving violations of constitutional rights (such as civil rights claims under 42 U.S.C. § 1983) or specific federal statutes can be heard in federal court.**

5. **Supplemental Jurisdiction: Federal courts can also hear state law tort claims if they are related to a case that is already within federal jurisdiction. Under 28 U.S.C. § 1367, if a federal court has original jurisdiction over some claims, it can hear additional state law claims that are part of the same case or controversy.**

6. **Federal Tort Claims Act (FTCA): This statute (28 U.S.C. §§ 1346(b), 26712680) allows individuals to sue the United States for certain torts committed by federal employees acting within the scope of their employment. The FTCA provides a limited waiver of sovereign immunity, permitting plaintiffs to bring tort claims against the federal government in federal court.**

### PARTIES

1. **Plaintiff Sharrod Moten is a resident of the State of California, currently incarcerated under a sentence unlawfully enhanced in violation of multiple provisions of the California Penal Code.**

2. **Defendant Superior Court of California, County of Los Angeles (Compton Courthouse), & Los Angeles County District Attorney's Office is a governmental entity organized under the laws of the State of California, responsible for the administration of justice within its jurisdiction.**

3. **Defendant Theresa P.  Magno, and at all relevant times was, a Superior Court Judge who presided over my habeas corpus criminal proceedings. Defendant is sued in her individual for actions taken under color of state law.**

4. **At all pertinent times during these constitutional violations, Defendant DA Fullerton functioned as an officer of the court be sued in his individual capacity wielding the authority and responsibility inherent to that role. In this capacity, Fullerton was tasked with upholding the rule of law and ensuring that justice was served impartially. However, the conduct in question reveals a blatant disregard for these duties, indicating not just a failure in oversight, but an active participation in the perpetuation of the violations at issue.**

5. **At all pertinent times during these constitutional violations  J Flores functioned as an officer of the court as the court assistant.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 7

### FACTUAL ALLEGATIONS

1. <u>Your Honor, the Superior Court bears an unequivocal obligation to uphold the principles of justice through strict adherence to procedural fairness, impartiality, and the safeguarding of constitutional rights, obligations that have been grossly neglected in my case, demonstrating deliberate indifference and a failure to uphold the rule of law. This duty is not merely aspirational; it is foundational. It extends beyond the rote application of statutes and demands that the court exemplify the highest standards of integrity. Every litigant is entitled to equal protection under the law, and any deviation from this solemn duty undermines the very framework of justice, as has occurred in these proceedings, marked by gross negligence and reckless disregarded , furthermore abuse of the process for fairness.</u>

2. When such obligations are unfulfilled, when procedural norms are ignored, constitutional rights are denied, or bias taints judicial conduct, the court exposes itself to significant liability, as is now evident in this complaint. Such failures carry profound legal consequences, including appellate reversals, judicial reprimands, and civil liability under 42 U.S.C. § 1983 for actions taken under color of law that deprive individuals of their fundamental rights.

3. Your honor in my case, the court has not only infringed upon my due process rights, guaranteed by the Fourteenth Amendment, but also denied me my Sixth Amendment rights to confrontation and self-representation. This failure to comply with essential procedural rules, such as ensuring timely hearings, proper notifications, and affording litigants the opportunity to present their cases, is a breach of the court's fiduciary duty to administer justice equitably and without prejudice.

4. The consequences of these transgressions are far-reaching, eroding trust in the judiciary and undermining the legitimacy of its decisions. When a court becomes complicit in such failures, it perpetuates harm and injustice, making itself liable to legal scrutiny and ethical accountability.

5. Your Honor, the fidelity of the judiciary to its obligations is not merely a procedural formality; it is a cornerstone of democracy and the rule of law. The actions, or inactions, of the Los Angeles County Compton Superior Courthouse have not only failed me but have also violated the public's trust in an institution meant to safeguard justice. It is imperative that these wrongs be addressed immediately, for the sake of fairness and the preservation of the legal system's integrity.

6. Your Honor, Superior Court judges bear a profound and solemn duty to uphold the integrity of the judiciary by adhering strictly to the rules governing court procedures and the administration of justice. This obligation is not discretionary, nor is it subject to the personal biases or prejudices of those entrusted with such authority. Yet, Judges Patrick E. Connolly and Teresa P. Magno have violated this fundamental duty, allowing their roles as supposed neutral arbiters to be tainted by their self-imposed positions as vigilantes on gang violence By abusing the adjudication process.

7. This bias directly contravenes Canon 3C of the Code of Judicial Conduct, which mandates that judges avoid the appearance of impropriety and personal conflicts of interest, and 28 U.S.C. § 455, which compels disqualification where impartiality is reasonably questioned. Their conduct, rooted in personal agendas, has undermined the constitutional guarantees of fairness and impartiality, and such actions cannot be tolerated within the framework of justice, your honor.

8. Furthermore, their disregard for established legal precedents, such as Faretta v. California (1975), has exacerbated these violations. This landmark case affirms an individual's constitutional right to self-representation in criminal proceedings, a right that transcends mere procedural formalities. Judges Connolly and Magno have repeatedly obstructed my ability to represent myself, imposing unjustifiable barriers that directly infringe upon my Sixth Amendment rights. Additionally, their refusal to honor my right to personal appearance, as

**enshrined in California Rules of Court 3.670 and 3.672 and Penal Code § 977,
further violates my due process rights and my fundamental right to confront
witnesses against me.**

9. These violations are not isolated lapses; they reflect a sustained pattern of
negligence, malicious prosecution, and actual malice, undermining the legitimacy
of these proceedings since May 2023. When judges deviate from their obligations,
whether through bias, procedural deviation, or deliberate abuse of authority, the
repercussions extend beyond the immediate case, shaking public confidence in the
judicial system itself. The restriction of my self-representation rights and denial of
procedural safeguards not only taint the fairness of these proceedings but also
constitute grounds for appellate reversal and potential judicial discipline.

10. **Your Honor, such transgressions cannot be dismissed as mere oversights. They
invite legal scrutiny, expose the judiciary to accusations of misconduct, and
erode the foundational principle of equal protection under the law. In extreme
cases, as seen here, they rise to the level of actionable violations under 42
U.S.C. § 1983, warranting civil liability for depriving individuals of their
constitutional rights under color of law. The fidelity of judges to court rules is
not a ceremonial requirement, it is the cornerstone of justice itself. Judges
Connolly and Magno's repeated failures to adhere to these principles demand
not only recognition but also rectification to restore the integrity of these
proceedings and the broader judicial system.**

11. **Plaintiff was convicted and sentenced under a framework that included four
enhancements that violate Penal Code sections 1172.75, SB-483, 654, and
1170.1(f)-(g). These enhancements were improperly applied, resulting in a
sentence that far exceeds what is legally permissible under California law.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 10

12. The sentencing occurred in the Compton Courthouse and was marked by a failure to establish the necessary fact-finding processes or judicial scrutiny, moreover alternative dispute resolution required to ensure compliance with California Penal Code.

13. L.A. Superior Court Local Rule 3.272: Discusses the types of ADR available and the court's role in facilitating these processes.

14. L.A. Superior Court Local Rule 3.273: Provides guidelines for the selection of neutrals, including mediator qualifications and the process for selecting or assigning a mediator. These procedural deficiencies were permitted and perpetuated by Defendant Connolly.

15. Penal Code section 654 prohibits multiple punishments for the same act or omission. Plaintiff's case involved enhancements that effectively punished me multiple times for the same conduct, in direct violation of this statutory provision, as highlighted in People v. Vasquez (2022) 74 Cal.App.5th 1021.

16. Additionally, Penal Code section 1170.1(f)-(g) requires that subordinate terms and enhancements be applied in a manner that is consistent with statutory guidelines, ensuring proportionality and fairness. The sentencing enhancements imposed on Plaintiff were grossly disproportionate and were inconsistent with these mandates, as further demonstrated in California v. Rhodius (2023) and People v. Guevara (2023).

17. In light of the events surrounding the habeas corpus petition proceedings, on April 24, 2023, June 22, 2023, June 27, 2023, a pattern emerges that raises profound concerns about procedural irregularities and my right to due process by judges and their court clerks.

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 11

18. **Specifically, on each of these dates, critical proceedings were conducted in Department J and Department K without my presence, a clear deviation from both the standards of justice and my Sixth Amendment right to participate in hearings affecting my liberty.**

19. **On April 24, 2023, at 8:30 a.m., a habeas corpus petition was heard in Department J. This hearing, addressing a matter of grave constitutional significance, proceeded without affording me the opportunity to be present. The absence of the petitioner, who stands as the party most affected by the outcome, undermines the foundation of fairness and transparency expected in judicial proceedings.**

20. **Just as troubling, this pattern continued with another habeas corpus petition proceeding on June 22, 2023, at 8:30 a.m., once again in Department J, and once again without my presence. My exclusion from these proceedings not only stifles my right to respond directly to the court but also deprives the court of essential context and testimony relevant to my defense.**

21. **Plaintiff's habeas corpus petition, which meticulously detailed these statutory violations and referenced controlling case law such as People v. Codinha (2023) 92 Cal.App.5th 976, was summarily denied by Defendant Magno, who disregarded these critical legal arguments August 26th 2024 and October 11th 2024. Please judicially notice 2:23-cv-08737 & XSCTA108752-01 dockets.**

22. **In a clear and intentional violation of my constitutional rights under the Fifth, Eighth, and Fourteenth Amendments, Judge Patrick E. Connolly has engaged in overtly retaliatory conduct in response to my exercise of First Amendment rights to petition the court. This misconduct includes, but was not limited to, his manipulation of procedural safeguards, arbitrary denial of my right to be present in court, and undue delay tactics that appear calculated to obstruct justice and deny my rightful release. By obstructing my access to due process,**

**Judge Connolly's actions impose punitive and oppressive restraints that
effectively denied me the constitutional protections guaranteed under both
state and federal law.**

23. **Further, this retaliation is particularly evident in the wake of my recent attempts
to seek recusals of other judicial officers presiding over my civil cases,
attempts that sought only to ensure a fair and impartial process, which is my
absolute right. Instead of facilitating my due process, Judge Connolly employed
his authority to create procedural barriers, blatantly disregarding my rights as
outlined in Penal Code Sections 1170.1(f)-(g), Penal Code 654, 12022.7, and
1172.75, as well as relevant case law including People v. Rodriguez 2009 and
People v. Cooper (2023), which preclude certain sentencing enhancements he
has improperly applied.**

24. <u>**Patrick E Connolly continued imposition of an illegal sentence is not only a
direct denial of due process but also constitutes cruel and unusual punishment
as prohibited by the Eighth Amendment, particularly given the factual basis and
evidentiary support I have presented in my habeas petition.**</u>

25. <u>**Moreover, Judge Connolly's actions exhibit a bias so severe that it has resulted
in deliberate neglect of key facts and procedural missteps that would otherwise
secure my release. His retaliatory delays, including missed procedural
deadlines, refusal to acknowledge critical errors in my sentence, and blatant
disregard of mandatory habeas timelines, strongly indicate a concerted effort
to prolong my detention unlawfully.**</u>

26. These abuses are compounded by the court clerks' Gabriella Ruela's conduct, who,
in unison with Judge Connolly, **have participated in scheduling manipulations
and obstructions that violate the statutory 60-day rule on habeas petition
responses. This orchestrated effort to thwart my release undermines the core**

principles of equal protection and due process and speaks to a deeper systemic pattern of bias and misconduct within the court.

27. **Judge Connolly's deliberate misuse of procedural power to infringe upon my rights has not only extended my false imprisonment but has also served to inflict significant emotional and financial hardship on my family, who have been forced to take exhaustive measures to seek the truth and secure my freedom. These actions collectively represent an egregious violation of my constitutional rights, and I am prepared to pursue all legal avenues necessary to hold Judge Connolly and his accomplices accountable, your honor.**

28. The ongoing denial of justice in my case is a stark reminder that no authority should remain unchecked in its capacity to deprive individuals of liberty.

29. Defendant Magno's refusal to consider the merits of my habeas corpus petition, despite the clear statutory violations and recent jurisprudence supporting my claims, constituted a deliberate indifference to my constitutional rights. The actions of Defendants have resulted in my continued unlawful incarceration, amounting to Extraordinary circumstances, false imprisonment and malicious prosecution under federal law.

30. Your Honor, on March 28, 2024, I was again denied the fundamental right to attend a hearing for which I was never properly notified by Gabriella Ruela, a repeated occurrence that underscores a pattern of deliberate malfeasance. The court, in its calculated cruelty, once again denied my freedom. There was no mention of an attorney being assigned to me, and yet, without my presence or legal representation, the court moved forward.

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 14

31. **On May 20, 2024, Patrick E. Connolly, a judge who should never have presided over my petition due to several lawsuits I have pending against him, ruled unlawfully. Again, there was no mention of an attorney, and my file was handled without any examination or question, your honor.**

32. **On June 13, 2024, Judge Connolly once more prejudiced my case, this time through deliberate delays that violate the mandate of 28 U.S.C. § 455, requiring his recusal for clear bias, fraudulent, and malicious conduct. I was excluded from the proceedings, allowing the court to evade all claims and flagrantly disregard both the rules of court and the Constitution's guarantees of due process and equal protection.**

33. **Further compounding these violations, on August 26, 2024, Judge Theresa P. Magno, with judicial assistance from J. Flores, had my case file in the courtroom present at the time of decision to further proceed, undeniably establishing the ability to set a court date. Yet, in a transparent defense tactic, another delay was orchestrated, with the mention of an attorney's assignment for the upcoming hearing on October 11, 2024, your honor.**

34. **Despite this, on the appointed date, a malicious conspiracy unfolded between District Attorney John Curtis Fullerton, Clerk J. Flores, and Judge Magno, who falsely claimed that my case file and habeas petitions were missing. Every claim and argument I raised was strategically ignored in this clear act of actual malice designed to obstruct justice.**

35. **It is clear that these delays are not coincidental, but calculated maneuvers designed to prolong my unlawful detention. The courts, including the clerks, have telegraphed their intent to fabricate justifications for each postponement, continuing with the same pretext as they push this matter further to October 28th, where yet again, I anticipate the forced assignment of a public defender and another contrived delay. This orchestrated abuse of power reflects an**

ongoing conspiracy among officers of the court, whose misconduct remains
unchecked, all to deny me procedural due process. This judicial overreach
must not be allowed to continue without scrutiny.

36. On October 11, 2024, a hearing at the Compton Superior Courthouse became
emblematic of a broader, systemic effort to perpetuate the miscarriage of
justice under the guise of judicial procedure. Judge Theresa P. Magno, in direct
alignment with the actions of Patrick E. Connolly, engaged in a deliberate and
calculated scheme to prolong my unlawful detention and abuse of process.
This pattern of misconduct did not emerge in isolation. Connolly, leveraging his
background as an ex-gang prosecutor, initiated this carefully orchestrated
series of delays in June 2023, manipulating procedural mechanisms to frustrate
and obstruct my release.

37. In continuation of this plot, Judge Magno, operating under similar directives ( ex
gang prosecutor ) from within the judiciary, extended this strategy of
obfuscation during the August 26th 2024, & October 11th, October 28th, and
November 15th 2024 hearings, ignoring overwhelming legal evidence that proves
the illegality of my conviction and sentencing under Penal Code sections
1170.1(f) and (g), 654, and 1172.75. Their conduct is not an example of mere
incompetence or judicial error; rather, it reflects a tactical abuse of power,
designed to entrench my wrongful incarceration.

38. What we are witnessing here is not isolated misconduct but a more insidious
collusion within the judiciary, a network that involves the concerted efforts of
multiple actors, all seemingly working in tandem of a conspiracy. Like Judge
Eleanor J. Hunter before her, Magno's rulings cannot be understood as the work
of an independent arbiter of justice.

39. **Rather, her assignment to my case following Connolly's recusal is a clear indication of a retaliatory and coordinated agenda aimed at ensuring my continued wrongful imprisonment by ex gang prosecutors by the courts. This case, particularly under number XSCTA108752-01, must be judicially noticed as a glaring example of bias and misconduct, where Connolly's obstructionist rulings in June 2023 and Magno's subsequent actions represent not a random coincidence, but a systemic effort by higher judicial authorities to suppress the truth, punish me for seeking justice, and ensure that I remain incarcerated, all while suppressing any evidence that might expose their complicity.**

40. **Further evidence of this ongoing conspiracy became apparent when the court clerk inexplicably recommended a 60-day delay for the next hearing, a delay without any legal justification or jurisdiction from a court clerk. This action is not just a procedural misstep; it is a direct violation of my constitutional rights under the Fifth and Fourteenth Amendments. Given the merits of my case, I am entitled to immediate resentencing and release. Yet, this reckless disregard for established legal norms reveals a more sinister motive: to intentionally delay my rightful release and deprive me of due process by acting recklessly with negligence.**

41. **This is not the first instance of such underhanded tactics; the clerk's actions on August 26th, 2024, and again on October 11th, 28th and November 15th 2024, show a repeated pattern of deliberate obstruction and unwanted punitive measures while engaging in a civil conspiracy. The failure to deliver my case file to the judge is not an administrative oversight but rather a strategic attempt to deny me justice and prevent the lawful conclusion of my case.**

42. **Your Honor, I would like to draw the court's attention to the troubling conduct that has transpired within these proceedings. It has come to light that members of the District Attorney's office have been engaging in discussions, off the record, with the court clerk and several attorneys present in the courtroom, casting disparaging remarks about DA Gascon.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 17

43. This conduct appears to be a deliberate effort to taint the clerk's perception and undermine the integrity of these proceedings through collusion.

44. Furthermore, during a recent session on October 11th 2024 before my case was heard, while discussing case timelines, Judge Theresa P. Magno made the disconcerting comment, "How about we wait until after the election?" This remark suggests a premeditated strategy to circumvent the constraints imposed by DA Gascon and to expedite case resolutions in a manner that would be otherwise unpermissible, thereby directly contravening AB 256, as mandated by DA Gascon himself, your honor.

45. Additionally, I would like to bring to the court's attention an instance where Judge Magno interrupted a case with a remark about having "a cup of coffee waiting." Yet, in that very moment, she failed to provide the defendant with the option to waive time, instead demanding, "I'm going to need you to waive time." Her offhand remark, "I have a cup of coffee waiting," served as a stark indication of her profound disregard for the gravity of my situation, a life-altering matter being treated with flippancy and contempt.

46. This dismissal of the court's solemn responsibility is not merely a lapse in decorum; it represents a flagrant affront to the very essence of justice itself. Further exacerbating this disconcerting atmosphere, Judge Magno's comments regarding her dissatisfaction with District Attorney Gascon and his political fortunes, speculating on his lack of support and the waning of his electoral prospects, are deeply troubling, your honor.

47. Such remarks raise significant concerns about the pervasive influence of political considerations on judicial proceedings, suggesting a disturbing trend where justice is subordinated to electoral strategy rather than upheld as an immutable principle. This is not a mere instance of judicial misstep; it is a manifestation of malicious prosecution, obstruction of justice, and retaliation

masquerading as procedural adherence and abuse of power to abuse the
process.

48. The cumulative effect of these actions constitutes clear violations of 42 U.S.C.
§§ 1983 and 1985, as this conspiracy has escalated from errors into a deliberate
campaign orchestrated to deny me my rights, sustain my wrongful detention,
and subvert the fundamental course of justice by civil conspiracy.

49. Your Honor, I must bring to the court's attention the remarks made by Judge
Magno during the hearing on October 11, 2024, which starkly reveal her bias and
flagrant disregard for the principle of judicial neutrality. In discussing my
habeas petition under AB 256, she remarked, "the court usually denies the
habeas anyway," a statement that not only reflects a troubling predisposition
but also undermines the fundamental integrity of the judicial process. Such a
casual dismissal of a critical legal petition is not merely trivial; it embodies a
deeper prejudice that has tainted the entire handling of my case from its
inception.

50. It is disheartening to note that my wife undertook a three-hour journey on the
same date, much like her efforts in June and July of 2023, to attend these
proceedings, only to face disappointment at the hands of those tasked with
upholding the law. Furthermore, Judge Magno's decision to exclude me from
pivotal hearings is a blatant violation of Penal Code 977 and Rule 3.670(f),
constituting an egregious affront to my Sixth Amendment right to be present at
all stages of the proceedings constitute state tort violations of negligence due
to intentional infliction of emotional distress towards me.

51. Your Honor, once again, I am compelled to address the ongoing and egregious
violations of my constitutional rights, which were highlighted during the
November 15, 2024, court date, my third missed hearing since August 26, 2024.
This follows a pattern of procedural neglect and judicial misconduct, despite

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 19

my explicit relinquishment of counsel through a motion for personal appearance, your honor.

52. The motion, submitted to underscore my intent to represent myself, made clear that I do not require any attorney to argue the removal of four illegal sentence enhancements under Penal Code §§ 1170.1(f), 654, 1172.75, and 12022.7. These enhancements stem from alleged violations misapplied in 2006 – 2009, and their removal mandates my immediate release under the unequivocal standards of law.

53. On this day November 15th 2024, my wife, battling numerous illnesses, once again drove three hours to attend this hearing and ensure my rights were not further trampled upon. She arrived at 8:30 a.m., prepared to witness the court rightfully acknowledge the unlawfulness of my continued incarceration.

54. Yet again, the conduct of Judge Teresa P. Magno betrayed the impartiality and diligence demanded of her position. Displaying inappropriate sarcasm, she remarked that my case was her "favorite," a comment that underscores her awareness of my formal complaints about her bias and misconduct due to her not knowing of me at all, your honor.

55. Her lack of preparation was further evident as she had not even reviewed my case file, requiring her clerk to retrieve it during the hearing. This unprofessionalism delayed proceedings and revealed her continued disregard for the gravity of my situation and the need for justice, your honor.

56. Judge Magno compounded these errors by asserting that the November 15 hearing was merely a continuation of prior proceedings, citing the court's alleged inability to understand the relief I seek. Your Honor, I could not be clearer: my petition asserts wrongful conviction and challenges four illegal

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 20

enhancements. The relief sought is freedom, plain and simple, yet Judge Magno's actions suggest a deliberate effort to avoid addressing this injustice with actual malic, and retaliation against my protected conduct to redress your honor.

57. **Her statement on November 15th 2024 that more time was needed on October 28th 2024 demonstrates actual malice, as no valid "good cause" was established to justify the delays, contrary to the minute orders my wife requested, which vaguely reference "good cause" without further explanation.**

58. **Adding to this travesty, the October 28 hearing, where I was again absent, was inexplicably handled by an unknown judge in Department C. I was not provided a minute order or an adequate record of the findings from that hearing, leaving critical procedural gaps and unanswered questions I could've answered if present at court on this particular day your honor. This further reflects the court's failure to ensure transparency and due process in these proceedings.**

59. **Your Honor, it is with profound dismay and unrelenting frustration that I bring to your attention the egregious miscarriage of justice that continues to plague my case. Despite having endured no fewer than six court dates ostensibly aimed at addressing my unlawful detention since , I remain unjustly incarcerated due to the overtly prejudiced and biased conduct of judicial officers such as Teresa P. Magno, David O. Carter, and Sheri Pym.**

60. **Their actions, or rather, their deliberate inactions, embody a clear pattern of malicious prosecution and conspiracy, designed not only to prolong my imprisonment but also to obstruct my pursuit of rightful relief in my civil suit for monetary compensation.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 21

61. Most recently, on November 22, 2024, the court once again convened under false pretenses, perpetuating a cycle of lies and delays that serve no purpose other than to antagonize my already untenable situation. This disgraceful negligence has deprived me of celebrating my birthday on October 23rd, Thanksgiving, and now, Christmas & The New Years due to her negligence. Such reckless disregard for justice, and the court's abdication of its foundational obligations, permits its subordinates to act with impunity, tarnishing the very integrity of this institution and undermining the principles It is sworn to uphold, your honor.

62. It is clear, through a meticulous examination of the record and the actions taken by Teresa P. Magno and Sheri Pym, that a calculated and deliberate conspiracy is unfolding, one in which both parties are operating in concert with undeniable precision. The decision to delay my court date to December 6, 2024, serves as more than a procedural inconvenience; it is a strategic maneuver intended to synchronize their efforts.

63. This delay provides Sheri Pym with the pretextual opportunity to feign an imminent response to my petition in case 23-cv-08737, thereby attempting to fabricate the illusion of judicial diligence while shielding themselves from liability. Such conniving tactics are emblematic of a coordinated effort to obscure the truth, manipulate the judicial process, and evade accountability. Their actions betray a shared intent to exploit procedural mechanisms to undermine my rights, delay justice, and perpetuate a pattern of obstruction that is as deliberate as it is reprehensible.

64. On December 6, 2024, it marks the sixth consecutive court date without me being present and where I have been unlawfully denied my rightful freedom, a direct result of the egregious and calculated misconduct of Judge Theresa P. Magno. She has persistently abused her judicial power, operating in clear conspiracy with Magistrate Sheri Pym and other negligent judges, whose actions transcend incompetence to constitute deliberate criminal conduct. This extends to officials within the Superior Courthouse, an institution already embroiled in three separate Tort lawsuits I have filed for their role in perpetuating these injustices Of hate crimes their committing your honor.

65. **Judge Magno, acting with intentional malfeasance, has repeatedly dismissed valid claims under the guise of baseless reasoning, despite overwhelming evidence that my case remains open and that I fully qualify under all new directives mandating immediate relief. Her actions betray a deliberate strategy to funnel my case into the Second Appellate District, perpetuating unnecessary and unlawful delays designed solely to extend my incarceration without justification, your honor. This, however, is far from an isolated incident. It represents a coordinated and systemic conspiracy involving court clerks, echoing the retaliatory tactics of Patrick E. Connolly, your honor.**

66. **These efforts are undoubtedly linked to the three lawsuits I have filed against Judge Magno's criminal actions, cases that are readily accessible on PACER, should she choose to uphold her oath of office rather than pursue this vendetta. Instead, she continues to act in concert with Sheri Pym, issuing strategically timed orders designed to align and obstruct justice in unison. This calculated collusion is not only an affront to my constitutional rights but also a blatant attempt to undermine my fight for freedom and retaliate against my unwavering efforts to hold her accountable for her flagrant abuses of power.**

67. **The hate crimes perpetrated by Judge Theresa P. Magno demand immediate and thorough investigation, as her actions exhibit a blatant and willful violation of Penal Code §§ 422.55, 422.6, 422.7, and 422.75. Her conduct is motivated by an evident bias, prejudice, and hatred specifically targeting individuals associated with gang affiliations, thereby stripping us of our fundamental rights and protections under the law. Judge Magno's persistent disregard for these statutes underscores not only her negligence but her contempt for the principles of justice and equality these laws are designed to uphold.**

68. **Her actions, steeped in prejudice, meet the statutory definitions of hate crimes, as they are calculated to intimidate and deprive individuals of their rights through unlawful dismissals, retaliatory delays, and conspiratorial abuse of judicial authority. The intentional nature of these violations necessitates that Penal Code provisions be applied and enforced against her.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 23

69. It is imperative that these statutes be refreshed and enforced in this complaint to hold her accountable for her misconduct and to remind her of the legal and ethical obligations she has flagrantly disregarded. Failure to address her unlawful actions would not only perpetuate her abuses but would also undermine the public's trust in the judicial system.

70. Once again On December 13th 2024, this conniving and corrupt Deputy District Attorney has demonstrated the same vindictive tactics as Deputy Attorney General Lisa Giarratano, exposing a systemic pattern of civil conspiracies operating under the guise of justice within the Los Angeles County Compton Superior Courthouse.

71. These courts, rather than upholding their duty to administer justice impartially, have instead engaged in a coordinated effort to obstruct my fight for freedom and relief. Their failure to intervene in or prevent these conspiracies reveals not mere negligence but active complicity, aligning them with malicious and sadistic intents to intimidate and suppress. By turning a blind eye to these injustices, they implicate themselves in a system where subordinates must act swiftly to correct the course, firing those judges who perpetuate these continuous, egregious abuses of power, your honor.

72. Now, my heart is heavy, and my 67-year-old mother's heart is broken, as yet another holiday season passes with me unjustly detained under the weight of malicious prosecution. Judge Teresa P. Magno hate, whose actions are anything but honorable, exemplifies this corruption. On December 13, 2024, at 8:30 a.m. in Department F, a hearing was held in my absence for the 7th time with Teresa P Magno, your honor, a blatant violation of my rights despite my explicit request to represent myself, as no lawyer is required for the matter of resentencing & release.

73. **This marks the seventh court date since August 26, 2024, with nothing achieved but intentional delays by Ms. Magno. This pattern of malice, cruelty, and unconstitutional punishment is nothing less than a calculated abuse of power, perpetuated to prolong my unlawful imprisonment and obstruct justice. Judge Magno wields her authority not to serve justice but to weaponize the system against me, and this miscarriage of justice must not be tolerated, your honor.**

74. **Your Honor, the procedural and substantive misrepresentations contained within the denial of my petition for habeas corpus are emblematic of the broader judicial malfeasance and systemic negligence that have plagued my case for over a decade. The court's summary rejection of my claims based on purported defects in form, service, and completeness is nothing more than a calculated maneuver to evade accountability for the egregious constitutional violations that I have meticulously documented.**

75. The record shows that **I have provided irrefutable evidence of ineffective assistance of counsel, including the disbarment of my attorney, William L. McKinney, and corroborating documentation from the California State Bar, including complaint number 12-O-17875 and CSF case number 12-F-17951.** These records, alongside **correspondence from February 6th and 14th and December 2013, clearly establish the deficient representation that led to my unjust sentencing.** The court's insistence on technicalities, such as **single-spaced text or the absence of judicial form HC-001,** as grounds for denial is a **transparent attempt to avoid addressing the merits of my claims.**

76. Further, **the assertion that my petition lacks necessary information, such as details of my sentencing, appeals, and prior habeas filings, is demonstrably false. The court's own memorandum acknowledges the existence of these records,** but instead of engaging with the substantive issues, **such as the legally invalid enhancement under Penal Code 667(a)(1), it chooses to conflate my arguments with irrelevant statutes like 1171.1, which I never cited**. This **deliberate mischaracterization** of my claims amounts to **judicial bad faith and violates my rights to due process and equal protection under the law.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 25

77. **Moreover, the court's dismissal of my petition as "raising issues already litigated" fails to consider the new evidence and context I have presented, such as** corroborating documentation from the California State Bar, including complaint number 12-O-17875 and CSF case number 12-F-17951. **Including the continuous negligent misconduct of the State Bar of California and its Chief Trial Counsel, Mark Harvey, who dismissed my 2024 complaint (Case 24-O-11323) despite overwhelming evidence of extortion and fraud. The court's reliance on procedural defaults to obscure its complicity in perpetuating these injustices is not only legally indefensible but morally reprehensible.**

78. **Finally, the persistent pattern of judicial malice and collusion is evident in the court's refusal to address my claims under Penal Code sections 1170.1(f) and (g), 654, and 1172.75, which clearly demonstrate that my sentence was illegally enhanced.** This is not a mere procedural oversight but **a deliberate strategy to suppress the truth and shield complicit actors from accountability. The court's attempt to trivialize my grievances as mere "mistakes" or "misunderstandings" is an affront to the principles of justice and undermines the integrity of the judicial system. I urge this court to reject the superficial justifications provided and to engage with the substantive claims that I have brought forth in the interest of justice and equity.**

79. **Your Honor, the actions of Deputy District Attorney Teresa P. Magno On several hearing dates including January 3rd 2025, alongside her deliberate acquiescence to my illegal enhancements, represent a calculated and ongoing denial of justice, intended to perpetuate a wrongful conviction founded on malicious prosecution. The affidavit signed and notarized by Rafael Dawon Milton, the alleged victim in this case, unequivocally states that I never possessed a weapon and that it made no sense why police investigators would insist that I held a gun in my left hand, pointing it at the right side of his head, especially when I am undeniably right-handed. This sworn statement corroborates the truth I have maintained since 2009 and exposes a conspiracy orchestrated by the District Attorney's Office, Judge Eleanor J. Hunter, and my paid defense attorneys, Quinton B. Sims and William L. McKinney, in case TA108752 / XSCTA108752-01.**

80. This conspiracy, further evidenced by articles on misconduct involving Patrick E. Connolly, William L. McKinney, & Quinton B Simms, was designed to ensure my wrongful conviction and obscure systemic abuses of power. Despite the compelling affidavit, the existence of longstanding applicable laws, such as Penal Code sections 654, 1172.75, and 1170.1(f) and (g), and significant legal reforms, Ms. Magno has continued to obstruct justice by refusing to address legislative mandates for resentencing, including Senate Bills 620, 81, 82, and 483, as well as Assembly Bills 333, 2942, and 256 under the Racial Justice Act.

81. Ms. Magno's calculated inaction is not simply a lapse in diligence; it is a deliberate and tactical maneuver to sidestep the transformative implications of AB 256 and the California Racial Justice Act, laws that, if applied, would obliterate the fraudulent framework sustaining my conviction.

82. By ignoring the petitions I submitted under AB 256 in February and March 2024, Ms. Magno perpetuates a systemic injustice designed to suppress legally significant evidence that undermines the integrity of my conviction. She further exacerbates this miscarriage of justice by falsely claiming that my habeas corpus petitions are merely duplicative of those filed over a decade ago by my appellate attorney, Heather J. Manolakis, which were improperly denied by the Second Appellate District. This mischaracterization is not a coincidence, it is an intentional strategy to dismiss the egregious constitutional violations and illegal enhancements I have consistently highlighted.

83. Ms. Manolakis's inaction at the time of her filings, despite her evident awareness of these violations, underscores her complicity in facilitating these injustices. Her failure to address these critical issues, coupled with Ms. Magno's current refusal to engage with the merits of my petitions, reveals a concerted effort to obscure the truth and shield the fraudulent underpinnings of my conviction from scrutiny. This strategy stands in stark contrast to cases such as *People v. Stubblefield*, where the California Court of Appeal recently vacated Dana Stubblefield's conviction based on the prosecution's racially discriminatory conduct, a clear precedent for judicial intervention when systemic violations are at play. Ms. Magno's acquiescence to these practices demands immediate judicial notice and correction, as her actions, or

**deliberate lack thereof, serve to perpetuate malice and deny me the equal
protection that these laws were enacted to ensure.**

84. **This baseless dismissal is contradicted by court records and video footage from October 2024, showing that my wife delivered all necessary documentation from my 2009-2010 case alongside updated petitions containing critical new evidence. This ensured no overlap or discrepancy between the filings. Yet, Ms. Magno and her conspirators continue to obfuscate and suppress the truth.**

85. **My petitions present six undeniable grounds of newly discovered evidence, including the improper application of gang enhancements under Penal Code § 186.22, newly uncovered illegal gun enhancements under § 12022.53, and violations of existing laws such as Penal Code sections 654, 1172.75, 12022.7, and 1170.1(f) and (g). These violations existed at the time of my sentencing and are supported by precedent in People v. Rodriguez (2009). Additionally, the affidavit, court records, news articles, bar complaints from 2011-2012, and other documentation confirm newly discovered prosecutorial misconduct and ineffective assistance of counsel.**

86. **Yet, despite petitions filed in April and June 2024 addressing these issues, Ms. Magno and her predecessors, Judge Hunter, Patrick E. Connolly, and others, have denied me meaningful consideration. Even Judge Hunter's 2023 findings acknowledging prosecutorial misconduct and ineffective counsel were rendered meaningless by her abrupt retirement, which allowed Patrick E. Connolly and then Ms. Magno to perpetuate this injustice with calculated malice.**

87. **The collective actions of Teresa P. Magno, Eleanor J. Hunter, Patrick E. Connolly, Judge David O. Carter, and Magistrate Sheri Pym in case XSCTA108752-01, TA108752, and 23-cv-08737 have inflicted irreparable harm, unlawfully keeping me incarcerated during irreplaceable family milestones, including Thanksgivings, Christmas's, New Year's, and the birthdays of my wife, mother, and children. Furthermore, this sustained injustice robbed me of the chance to mourn my aunt's passing in February 2024, compounding the emotional and psychological toll inflicted by this fraud and abuse of power.**

88. This case is emblematic of the systemic racial bias plaguing California's justice system, as evidenced by Ms. Magno's deliberate refusal to apply legislative reforms designed to rectify historic injustices and ensure equitable sentencing. Your Honor, this persistent pattern of corruption, fraud, and racial discrimination cannot be allowed to continue. I respectfully urge this court to intervene decisively, not only to rectify the injustices in my case but also to preserve the integrity of California's judicial system and dismantle the systemic inequities that continue to deny justice to individuals like myself.

89. Defendants David O. Carter, Sheri Pym, Deputy District Attorney Theresa P. Magno, and Patrick E. Connolly colluded through ex parte communications and improper judicial bias. This misconduct extended to coordination with correctional facilities to interfere with my litigation efforts.

90. Bribery and conspiratorial actions were deployed to unlawfully suppress my claims, violating the due process and equal protection clauses of the Constitution Fraudulently to obstruct the due course of justice. Please judicially notice XSCTA108752-01, 23-cv-08737, TA108752 your honor.

91. Your Honor, this pattern of misconduct aligns with Judge Magno's predecessor, Eleanor J. Hunter, & Patrick E. Connolly, whose negligence and malice in handling my case created the very framework for these continued abuses. Both have ignored the obvious illegality of my enhancements and have instead engaged in procedural evasion to avoid acknowledging the wrongful conviction that is now incontrovertible.

92. Even Judge Eleanor J. Hunter, who originally imposed these enhancements, has since acknowledged their illegality and clear legal errors. Yet, instead of Magno rectifying her error, she now makes unfounded justifications to prolong my unlawful detention, your honor.

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 29

93. Had the Clerk informed her of my request under my due process protection, or
if I had been allowed to appear personally, I could have clarified my habeas
corpus petition and the relief it seeks. Instead, the court's failure to grant my
presence violates my constitutional rights, including the Sixth Amendment
right to confrontation and the due process protections under the Fourteenth
Amendment.

94. This judicial conduct is not merely negligent, it is a deliberate obstruction of
justice that invites appellate review, disciplinary scrutiny, and civil liability
under 42 U.S.C. § 1983.

95. Your Honor, it is no secret that courts and administrative oversight have, at
times, employed individuals as figureheads to obscure deeper systemic
corruption, with female officials often strategically placed to deflect scrutiny
and shield institutional misconduct. This is not an indictment of gender but an
acknowledgment of how power dynamics can be exploited within the judiciary
and government systems.

96. In my case, this reality is evident in the conduct of individuals like Kamala
Harris and Judge Teresa P. Magno, whose actions have gone beyond the scope
of their authority, reflecting an abuse of power that undermines their
obligations to justice and fairness, furthermore her grasp for qualified immunity
under new elect Donald Trump.

97. Judge Magno, in particular, has exhibited this through deliberate and
calculated delays, including the postponement of critical hearings beyond
November 2024, as she openly admitted during the October 11th proceeding,
your honor.

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 30

98. **These delays, Your Honor, appear to be part of a coordinated effort to also align with the incoming Los Angeles District Attorney-elect, Nathan Hochman, while harboring hopes for Kamala Harris's ascension to the presidency, individuals whose stances suggest a willingness to perpetuate systemic biases, particularly against incarcerated individuals. This calculated maneuvering is a transparent attempt to exploit transitions in leadership and policy to further a coordinated agenda under the guise of administrative necessity, your honor.**

99. **Judge Magno's actions strategically undermine reforms championed by George Gascón, who sought to challenge and expose law enforcement misconduct. His commitment to transparency and accountability disrupted entrenched conspiracies and made him a target for those benefiting from shielding government malfeasance.**

100. **By contrast, Judge Magno's delays and apparent collusion signify an attempt to restore practices that protect systemic abuses, rather than address them, thereby eroding the integrity of the judiciary abuse of process, your honor.**

101. **This, Your Honor, is not a matter of mere procedural inefficiency or judicial discretion; it is a deliberate and orchestrated effort to perpetuate abuse under the color of law violating torts of civil conspiracy. The effects of such misconduct extend far beyond my case, threatening the legitimacy of California's judicial system as a whole.**

102. **When those entrusted with upholding justice instead manipulate its processes for personal or political gain, the foundational trust upon which our democracy relies is irreparably compromised. It is imperative that this court acknowledges and confronts these patterns of misconduct.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 31

103.    **Justice delayed in this context is not only justice denied but justice weaponized to perpetuate harm and shield the truth. Your Honor, it is time to dismantle these manipulative practices and restore faith in the impartiality and integrity of our judicial system, your Honor.**

104.    **This exclusion not only strips me of my rights but also raises substantial questions regarding the fairness and transparency of the process. Moreover, the court's failure to refer my case to Alternative Dispute Resolution (ADR) under Rules 3.272 and 3.273 deprives me of crucial opportunities for redress and resolution. This neglect reinforces the conclusion that the court is more focused on perpetuating my incarceration than on the fair administration of justice.**

105.    **I respectfully urge the court to reconsider these matters with the utmost seriousness, as they bear directly on the principles of due process and the equitable treatment of all parties involved.**

106.    **The failure to notify me of the hearing, a violation of Rule 3.1300, compounded by the failure to honor my request for a personal appearance under Rules 3.670(f) and 3.673, underscores the systematic neglect of my rights. These combined failures constitute violations of my Sixth Amendment right to be present, my Fifth and Fourteenth Amendment rights to due process, and my Eighth Amendment protection against cruel and unusual punishment.**

107.    **The negligence, reckless behavior, and coordinated conspiracy among these judicial actors not only violate my constitutional rights but also subject me to false imprisonment, emotional distress, and the malicious perpetuation of injustice.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 32

1

## LEGAL CLAIMS

2

In a deliberate and systemic betrayal of justice, Judges Teresa P. Magno, David O.

3

Carter, and Magistrate Sheri Pym have engaged in a coordinated and calculated

conspiracy to subvert the rule of law, wield judicial privilege as a weapon, and

4

orchestrate an unlawful campaign of oppression against the Plaintiff. Their actions

5

transcend mere error or misjudgment; this is a strategic, willful abuse of power,

designed to frustrate due process, deny constitutional protections, and perpetuate

6

wrongful imprisonment under the guise of judicial authority.

7

Count 1 establishes gross negligence, wherein these judicial officers, bound by an

8

indisputable duty to uphold justice, knowingly and recklessly abandoned their

9

obligation, resulting in irreparable harm. Count 2, rooted in deliberate indifference,

exposes their intentional disregard for constitutional and statutory mandates,

10

deliberately subjecting the Plaintiff to unlawful confinement, procedural sabotage,

11

and judicial obstruction. Their misconduct escalates in Count 3, where they have

inflicted cruel and unusual punishment, manufacturing delays, undue hardship, and

12

unnecessary suffering that serve no legitimate penological interest.

13

Their calculated subversion of due process (Count 4) is evident through extrajudicial

14

communications, coordinated rulings, and the suppression of exculpatory evidence,

all designed to deprive the Plaintiff of lawful relief. This targeted misconduct further

15

violates equal protection under the Fourteenth Amendment (Count 5), wherein the

16

Plaintiff has been singled out for disparate treatment, selective enforcement, and

prejudicial rulings. Moreover, their collusive decisions, issued in tandem to frustrate

17

legal redress, establish both civil aiding and abetting (Count 6) and civil conspiracy

18

(Count 7), wherein they have engaged in a deliberate joint enterprise to perpetuate

19

unlawful incarceration and obstruct fundamental rights.

20

The scope of their reckless and unlawful conduct is further cemented by Count 8,

wherein their gross negligence and reckless disregard for due process illustrate a

21

deliberate pattern of bad faith adjudication. This misconduct directly facilitated false

22

imprisonment and de facto kidnapping (Count 9), where fraudulent judicial maneuvers

23

and procedural deceit were used to manufacture wrongful incarceration, in clear

violation of Penal Code § 236. Their actions further implicate Count 10, under 18 U.S.C.

24

§ 249 and California Penal Code §§ 422.55, 422.6, 422.7, and 422.75, establishing that

25

their biased rulings were motivated by discriminatory animus, particularly given Judge

26

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 33

27

Teresa P. Magno's documented history of disproportionately punitive rulings against individuals with alleged gang affiliations.

Beyond the immediate constitutional violations, Count 11 asserts violations of Title IV of the Civil Rights Act, underscoring their roles as state actors engaging in targeted discrimination against a protected class. These actions are further substantiated by Counts 12 and 13, invoking 42 U.S.C. §§ 1981 and 1983, wherein they knowingly violated federal civil rights protections and engaged in systemic judicial misconduct under color of law. The psychological toll inflicted by their relentless campaign of harassment and legal obstruction establishes Count 14, asserting intentional infliction of emotional distress, a direct consequence of their deliberate malfeasance.

Moreover, Count 15 identifies their reliance on actual malice, wherein they knowingly engaged in fabrications, procedural mischaracterizations, and deceptive rulings, all designed to mislead, convolute legal proceedings, and obstruct rightful relief. Finally, Count 16, based on malicious prosecution, asserts that their continued pursuit of baseless legal actions and wrongful confinement was executed with explicit intent to suppress the Plaintiff's rights, prolong my imprisonment, and subvert justice itself.

Taken together, these claims present a clear and convincing case of systemic, coordinated judicial abuse, not an isolated instance of poor judgment, but a preconceived, unlawful conspiracy to obstruct justice, deny constitutional protections, and perpetuate wrongful imprisonment. The Plaintiff demands immediate legal redress, full accountability for these judicial actors' egregious misconduct, and an end to the weaponization of judicial privilege as a tool for oppression under color of law.

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 34

1

## POINTS AND AUTHORITIES

2

**In People v. Codinha (2023) 92 Cal.App.5[th] 976, the court addressed the issue of**
3
**unauthorized sentences. Codinha appealed after the trial court modified his sentence**
**without conducting a full resentencing hearing. The appellate court agreed that the**
4
**trial court had inherent authority to correct an unauthorized sentence. However, the**
5
**court ruled that the defendant was entitled to a full resentencing hearing, particularly**
**in light of changes in sentencing laws during the pendency of the case. The case was**
6
**remanded for a proper hearing to ensure all legal options were considered.**

7

8
**In People v. Vasquez (2022) 74 Cal.App.5[th] 1021, the case dealt with the interpretation**
9
**of sentencing enhancements, particularly related to firearm use and gang**
**enhancements. The court reviewed how enhancements should be applied in light of**
10
**recent changes to sentencing laws and legislative intent, emphasizing careful**
11
**application to avoid over-punishment.**

12
**Both cases highlight the evolving nature of sentencing laws and enhancements in**
13
**California, with courts increasingly scrutinizing the application of multiple**
**enhancements to ensure they align with statutory guidelines and recent reforms.**
14

15
**Penal Code section 1170.1(f) and Penal Code section 654 both address issues related**
16
**to sentencing and enhancements in California law, particularly in the context of**
17
**preventing illegal multiple enhancements.**

18

19
**Penal Code section 1170.1(f)**

20
**This section specifically deals with the imposition of sentence enhancements. It**
**prohibits multiple enhancements for the same conduct, stating that if multiple**
21
**enhancements could apply to a single count, the court must impose only the greatest**
22
**enhancement unless the legislature has explicitly authorized cumulative punishment.**
23
**The key takeaway is that this section aims to prevent excessive sentencing by ensuring**
**that defendants are not punished multiple times for the same act.**
24

25

**Penal Code section 654**

This section further reinforces the principle against double punishment by prohibiting multiple punishments for the same act or omission. It states that if a person commits a single act that violates more than one statute, they can only be punished for one offense. This means that if a defendant is convicted of multiple charges arising from a single act, they cannot be sentenced for each one if it would result in a violation of this section.

**Application of Both Sections**

Together, sections 1170.1(f) and 654 ensure that courts do not impose illegal multiple enhancements on defendants. For example, if a defendant Is charged with a crime that also includes enhancements for both gang involvement and firearm use arising from the same incident, the court must determine the appropriate enhancement without violating the principles established in these sections.

Recent rulings have reinforced the application of these principles. In cases like People v. Vasquez (2022) and People v. Codinha (2023), California courts have reiterated that when multiple enhancements are considered, courts must adhere to the limitations set by these statutes to avoid imposing excessive or unlawful sentences. Penal Code section 1170.1(g) addresses the imposition of sentence enhancements in California, specifically regarding the imposition of terms of imprisonment that result from multiple enhancements. Here's an overview of its key points:

1. **Prohibition of Multiple Sentences:** Section 1170.1(g) prohibits the imposition of a separate term for enhancements that are based on the same act or conduct. This is intended to prevent double punishment for the same behavior.

2. **Enhancements in Sentencing:** The section clarifies that when a defendant is found to have committed a crime that qualifies for multiple enhancements, the court should impose only the most severe enhancement. This approach reinforces the principle that sentencing must be fair and proportional to the crime committed.

3. **Legislative Intent: The overarching intent of this section is to ensure that defendants do not face excessive punishment for a single act. Courts must carefully evaluate the applicability of enhancements to avoid violating this principle.**

**Recent case law has emphasized the importance of adhering to this statute. Courts have scrutinized sentences to ensure compliance with these provisions, particularly in light of legislative changes that have occurred to enhance fairness in sentencing.**

**The California Supreme Court's decision in this case emphasized the following:**

**Penal Code section 1170.1(f) prohibits double punishment by preventing both a firearm enhancement (under Penal Code section 12022.53) and a gang enhancement (under Penal Code section 186.22) from being imposed on the same count if they are based on the same conduct.**

**The court ruled that unless there is explicit legislative authorization, these enhancements cannot be applied cumulatively, which would result in an excessively harsh sentence.**

**The trial court had violated this rule by imposing both enhancements in Rodriguez's case, leading to the vacating of the sentence and remanding for resentencing.**

**This decision reinforced the principle that courts must ensure compliance with statutory limitations when applying multiple sentence enhancements to avoid excessive or unjust punishment. The ruling serves as a guideline for interpreting cumulative punishment under California's enhancements laws.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 37

## JUDICIAL NOTICES

Cases involving malicious prosecution and federal tort claims under 42 U.S.C. § 1983 in Los Angeles County and similar jurisdictions often include claims of wrongful conviction, prosecutorial misconduct, police misconduct, or fabricated evidence. Prisoners and wrongfully convicted individuals have won significant payouts for these types of civil rights violations. Here are some notable categories and cases:

1.  **Wrongful Convictions and Malicious Prosecution:**

**Obie Anthony v. Los Angeles County: Obie Anthony received a $13 million settlement after spending 17 years in prison due to a wrongful conviction based on false testimony and lack of disclosure of evidence. His § 1983 claim alleged that police and prosecutors engaged in misconduct and malicious prosecution by suppressing exculpatory evidence.**

**Frank O'Connell v. Los Angeles County: O'Connell received a $15 million settlement after 27 years of wrongful incarceration. His claim centered on fabricated evidence and witness manipulation by the Los Angeles Sheriff's Department, arguing it was a malicious prosecution case that violated his constitutional rights.**

2.  **Misconduct by Police and Prosecutors:**

**Jamison v. Los Angeles County Sheriff's Department: Jamison, who was falsely accused and wrongfully held for a murder he didn't commit, won a settlement of several million dollars based on claims of fabricated evidence and coerced witness testimony. His case highlighted a pattern of investigative misconduct that supported his § 1983 malicious prosecution claim.**

**Juan Catalan v. City of Los Angeles: Catalan filed a malicious prosecution suit after being wrongfully accused of murder. He later won a settlement after demonstrating that prosecutors and police fabricated evidence and disregarded key alibis. His case**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 38

emphasized the accountability of law enforcement agencies under § 1983 for
violations of due process.

3.    **Federal Tort Claims Act and § 1983 for Wrongful Convictions:**

**Harold Hall v. Los Angeles County: Hall received a $2 million settlement after his
conviction for a double murder was overturned due to prosecutorial and police
misconduct, including forced confessions and suppression of exculpatory evidence.
This case demonstrated how combined claims under § 1983 and the Federal Tort
Claims Act could yield substantial settlements for malicious prosecution.**

**Korey Wise, Central Park Five (related jurisdiction but notable for FTCA): Although not
in Los Angeles County, the Central Park Five case is an influential example of a large
payout for malicious prosecution. The city settled with Wise and other members for
$41 million, based on violations of their rights under § 1983, highlighting the impact of
coerced confessions and misconduct.**

4.    **Failure to Disclose Exculpatory Evidence (Brady Violations):**

**Michael Hanline v. Ventura County (near Los Angeles): After being wrongfully
convicted of murder and serving 36 years, Hanline received a $10 million settlement.
His § 1983 suit cited Brady violations, where prosecutors failed to disclose exculpatory
evidence, supporting his malicious prosecution claim.**

**These cases reflect how § 1983 claims, particularly those involving malicious
prosecution and federal torts, can lead to significant settlements or awards when
prisoners demonstrate that their wrongful convictions resulted from egregious
misconduct by law enforcement and prosecutors. The outcomes also underscore the
court's recognition of constitutional violations under due process, often entailing high
payouts for the suffering endured due to wrongful imprisonment.**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 39

5.  **"Kids for Cash" Scandal – False Imprisonment & Civil Rights
Violations**

**Judges**: Mark Ciavarella & Michael Conahan (**Pennsylvania**)

**Crime**: Illegally sentencing juveniles to for-profit detention centers in exchange for
kickbacks, depriving them of due process.

**Charges**: Racketeering, fraud, money laundering, conspiracy.

**Sentence**: Ciavarella (28 years), Conahan (17.5 years).

**Relevance to Your Case:** This case demonstrates how judges can be held accountable for
wrongfully imprisoning individuals for financial or political motives.

6.  **Judge Samuel Kent – Retaliation & Civil Rights Violations**

**Jurisdiction**: Southern District of Texas

**Crime**: <u>**Abusing his judicial power, sexually assaulting female employees, and
engaging in retaliation against those who spoke out.**</u>

**Charges**: Obstruction of justice, lying to investigators.

**Sentence**: 33 months in federal prison.

<u>**Relevance to Your Case: Shows how federal judges can face consequences for
violating civil rights and engaging in misconduct under color of law.**</u>

7.  **Judge Jack Camp – Racial Bias & Misconduct**

**Jurisdiction**: Georgia

**Crime**: Bought drugs and admitted to treating Black defendants unfairly in sentencing.

**Charges**: Drug possession, carrying firearms while committing drug offenses.

**Sentence**: 30 days in federal prison.

**Relevance to Your Case: <u>Demonstrates how racial bias in judicial rulings can be
grounds for criminal liability.</u>**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE
TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS
UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND
CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 40

### 8. Judge Thomas J. Maloney – Judicial Corruption & Fixing Cases

**Jurisdiction**: Cook County, Illinois

**Crime**: <u>Took bribes to fix murder cases, allowing wrongful convictions to stand while protecting guilty parties.</u>

**Charges**: Racketeering, conspiracy.

**Sentence**: 15 years in prison.

**Relevance to Your Case**: <u>Shows how judges can be prosecuted for deliberately manipulating the legal process to harm defendants.</u>

### 9. Judge Marcus Gordon – Racially Motivated Sentencing

**Jurisdiction**: Mississippi

**Crime**: Known for disproportionately harsh sentencing against Black defendants, particularly in capital cases.

**Outcome**: While never criminally charged, his rulings were overturned for racial bias and due process violations.

**Relevance to Your Case**: **Illustrates how racially motivated judicial misconduct can result in overturned convictions.**

<u>**False imprisonment & due process violations (Ciavarella, Conahan, Maloney) align with my claims of judicial conspiracy to prolong incarceration.**</u>

<u>**Judicial retaliation & obstruction of justice (Kent) match my allegations of court officials tampering with my filings and procedural delays.**</u>

<u>**Racial bias in judicial rulings (Camp, Gordon) supports your claim of racially discriminatory actions by court officials.**</u>

### 10. Judge Abel Limas – Bribery & Civil Rights Violations

**Crime**: Texas Judge Abel Limas accepted bribes and favors in exchange for favorable rulings, effectively corrupting the justice system.

**Charges**: Racketeering and corruption.

**Sentence**: Six years in federal prison.

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 41

**Significance**: Limas manipulated the judicial process, violating due process rights.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

     A.  For compensatory and punitive damages in the amount of 25 million dollars.

     B.  Demand for Jury Trial

     C.  For declaratory relief affirming that the enhancements imposed on Plaintiff's sentence are unlawful and void;

     D.  For injunctive relief ordering Plaintiff's immediate release or, in the alternative, a new sentencing hearing free from the unlawful enhancements;

     E.  For damages resulting from the period of false imprisonment and malicious prosecution suffered by Plaintiff;

     F.  For such other and further relief as the Court deems just and proper.

I, Sharrod Moten, inmate number F-36382, do hereby solemnly declare under penalty of perjury under the laws of the State of California that the foregoing statements are true and correct to the best of my knowledge and belief. It is essential to emphasize, for the sake of full transparency and adherence to legal propriety, that I am not a licensed attorney, nor have I passed the bar examination in any jurisdiction. My assertions herein are made in good faith, based solely on my personal understanding and experiences, without any intention to mislead or misrepresent my legal status. **DATED: February 10th , 2025.** Respectfully submitted,  Pro Se Litigant Sharrod Moten

**<u>I declare under the penalty of perjury that the forgoing is true and correct to the best of my knowledge and recollection your honor.</u>**

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

(DECLARATION / AFFADAVIT) NEW FILING UNDER THE FEDERAL TORT CLAIMS ACT (FTCA) AND THE STATE TORT CLAIMS ACT (STCA), CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, AND 1986, AND FURTHER VIOLATIONS UNDER 18 U.S.C. § 2071, THE OUTLINED CONDUCT REFLECTS GROSS MISCONDUCT AND CONSTITUTIONAL VIOLATIONS COMMITTED UNDER COLOR OF LAW - 43

**ATTACHMENT TO HABEAS CORPUS**

**Ground 1**

*Newly Discovered Evidence -Ineffective Assistance of Counsel*

William Lawrence McKinney failed to adhere to State Bar and ethical practices both during and
after representation of petitioner in this case. Mr. McKinney failed to provide effective counsel
and by:

1.  Defense counsel failed to return trial documents to petitioner.
2.  Defense counsel failed to obtain, or to attempt to obtain, video footage from the Metro
    and/or MTA which would have exonerated petitioner.
3.  Defense counsel failed to obtain video footage of the actual scene from MTA
    (Metropolitan Transportation Authority). Failed to obtain documentation of policies
    outlining the preservation of MTA video. Video of this incident would have had a great
    impact on the outcome of the case, had it been retrieved and used in trial, and would
    have exonerated petitioner.
4.  Defense counsel failed to subpoena petitioner phone records.
5.  Defense counsel failed to assert the fact that petitioner had money on him
    demonstrated that petitioner did not need to rob anyone.
6.  Defense counsel failed to call witnesses that were favorable in petitioner defense
    (Ashley Greene and Leve Ross), petitioner requested for these witnesses to be called to
    testify, however, there was no follow through from Mr. McKinney. The one witness that
    testified, later signed a notarized statement.
7.  Defense counsel failed to provide evidence that could have been favorable to the
    outcome of the case, ie. Phone records (proving petitioner had a phone and did not
    need to steal one), police inventory (to show petitioner was in possession of money and
    did not need to commit the crime of robbery for purposes of financial gain, etc.)
8.  Defense counsel failed to conduct himself in a professional manner and act diligently
    during trail and the sentencing phase. Petitioner was not bought in to participate in a
    Romero hearing to challenge the juvenile strike. In essence, he failed to request a
    Romero Hearing, and pressured petitioner into not challenging a juvenile adjudication,
    that was used for the purposed of sentencing, adding an additional strike and
    sentencing petitioner under the three strikes law.
9.  Defense counsel failed to challenge the prosecution's assertions that petitioner had a
    gun in petitioners waistband, which would not have been possible in circumstances
    where petitioner was wearing a white tank top, blue boxers, and blue jean shorts. It
    would have been unlikely and improbable for someone in that outfit to have a gun in
    their waistband as it would have been visible.
10. Defense counsel failed to object or challenge prosecutions allegations and testimony
    that were blatantly inconsistent from all phases of the case, including but not limited to
    the 911 call, police interrogation, preliminary hearing, and trial. He failed to take
    advantage of the fact that Mr. Milton initially told police that petitioner had simply

displayed a gun and he did not draw it or point it at Mr. Milton, prior to changing his
story and testifying that petitioner had in fact pointed it at his head.

11. Defense counsel failed to properly investigate and review petitioner case before
presenting in trial.

12. Defense counsel only visited petitioner once in jail and was thus, unable to formulate a
proper defense strategy.

13. Defense counsel did not waive time and proceeded to trial within one month of taking
petitioner case and in circumstances where he was woefully unprepared for trial.

Defense counsels ineffectiveness constitutionally violated petitioner due process right to a fair
trial.

Attorney William Lawrence McKinney was found to have a history/pattern of behavior that
ultimately concluded with disbarment.

William Lawrence McKinney was admitted to the bar December 18, 1975. In between the time
of admission and January 4, 2019, Mr. McKinney's public records consisted of, but was not
limited to the following. On January 9, 2003, in case no. 01-O-03615, Mr. McKinney was
privately reproved for a single count of failure to cooperate with the State Bar's investigation.

March 2003 (est.), William Lawrence McKinney represented Kellye Brothers in a preliminary
hearing. Brothers had decided that she would not be able to afford Mr. McKinney's services for
any matters after that hearing. Mr. McKinney accepted money from Brothers family members
on two separate occasions for a total amount of $1500. This was an amount that would cover
post-conviction services/appeals.

Mr. McKinney did not provide services and informed family members that he found no issues to
appeal in Brothers case, and would not procced with an appeal, but never conferred with
Brothers. Upon release Brothers requested money back that had been paid to Mr. McKinney for
the post-conviction services. Mr. McKinney did not return funds and the State Bar opened an
investigation, case no. 06-0-10709. Mr. McKinney was not responsive and was found to have
violated Business & Professions Code section 6068(i).

November 14, 2006 (effective date), in case no. 06-O-10709, Mr. McKinney was publicly
reproved for failing to communicate to his client that he had decided to not pursue an appeal
on her behalf, and failing to cooperate with the State Bar's Investigation. (Brothers Case)

January 16, 2011, Case No. 14-O-01186, William Lawrence McKinney was paid an advanced fee
of $6,252.50 (partial payment of $7,500 for preparation and filing of a write of habeas corpus
by parents of Theodore Snyder, Jr. Mr. McKinney did not consult with or obtain permission of
Mr. Snyder and had no communications with him. On November 17, 2014, Mr. McKinney
replied to the State Bar investigating Mr. McKinney's acceptance of money on behalf of a client
in which he did not enter into an agreement with. Mr. McKinney's response, was that he had

not communicated with Mr. Snyder because he had not received a full $7,500. The State Bar found that Mr. McKinney willfully violated Rules of Professional Conducted, rule 3-310(F).

March 22, 2016, Notice of disciplinary charges were filed in regards to Case No. 15-O-13944, the State Bar of California found William Lawrence McKinney to be in willful violation of Rules of Professional Conduct, rule 3-700(D)(1), Business and Professions Code, section 6068(m) (2 counts), and California Rules of Court, rule 9.20. It was found that on or about August 2013, Mr. McKinney was terminated as retained counsel and failed to release promptly, his clients, Brent Frosts requests for his files in September 2013.

 Mr. McKinney also failed to respond to two written status inquiries requested by Mr. Frost on December 14, 2014 and February 5, 2015. Furthermore, Mr. McKinney failed to keep Mr. Frost informed of significant developments in his case, and failing to inform him that he had "lost" the clients files.

June 15, 2013, Case. No. 14-O-03498, William Lawrence McKinney, received an advance fee in the amount of $5000, for preparation and filing of a writ of habeas corpus from Ida Dupree, for her son James Carter. In September 2013, Dupree complained to Mr. McKinney about having made no contact with her son or initiating any work on his case. She asked for her money back. Mr. McKinney asked if he could meet with Ms. Dupree at her home. In October, 2013, Mr. McKinney met with Ms. Dupree and she agreed to allow Mr. McKinney to continue representation, with the agreement that the petition for her son would be filed by April 2014. In April 2014, Ms. Dupree contacted Mr. McKinney and advised that he had not completed any of the work because a fee payment listed in the agreement had not been paid. A complaint was filed with the State bar.

On September 8, 2014, in response to a communication from the State Bar, who had initiated an investigation, Mr. McKinney stated, "Mr. Carter asked from an accounting on a letter dated 8/14/2014..... I have not communicated with him since he is not my client......." Mr. McKinney did not communicate with Mr. Carter or Ms. Dupree regarding any investigation, Legal analysis, or status to the progress of the writ petition, at any time between his employment on June 15, 2013 and February 18, 2015. Mr. McKinney was found to have willfully violated Rules of Professional Conduct, rule 3-310(F) and rule 3-110(A), and Business and Professions Code, section 6068(m).

March 19, 2015, A suspension order was GRANTED. Mr. McKinney was suspended from the practice of law for the first 90 days of his probation period. Mr. McKinney received a two-year suspension which was stayed and was placed on 3 years' probation. June 23, 2017, William Lawrence McKinney was disbarred by the Supreme Court of California.

January 4, 2019, William Lawrence McKinney was disbarred from the practice of law by the Supreme Court of Tennessee which was retroactive to June 23, 2017.

**Supporting Documents:**
Court records, minute orders, etc. letters mailed to the State Bar

**Ground 2**

_Newly Discovered Evidence – Witness Recanting of Testimony_
Rafael Milton signed a sworn affidavit that was notarized.

Rafael Milton was the only witness in the case during the trial that testified to the events that
occurred that day. In Mr. Milton's testimony it was evident that there were major
inconsistencies. Mr. Milton's account of the events greatly differed from the 911 call to the
preliminary hearing and lastly, the trial. On all three occasions Mr. Milton gave a very different
account of the events that occurred. Some of those inconsistencies included but were not
limited to the following:

1.  The youth stated to have been across the street at the time of the crime.
    a.  911 call – Mr. Milton testified that 2 other guys stood across the street, but
        never spoke to him or approached him. They were just looking and after his
        phone was taken, they ran off. He also stated they were being lookouts.
        (Opinion) In the same call Mr. Milton states that "a couple of guys went up".
    b.  Preliminary Hearing – There was no mention of the guys at all.
    c.  Trial – Mr. Milton testified that 2 youth were across the street and approached
        him and asked for his phone, he told them no and they walked away.
    d.  Police Interview – There was no mention of the youth across the street.
    e.  Declaration – There was no mention of any youth being involved.
2.  The gun
    a.  911 call – Mr. Milton stated that he showed the gun and that was all. He was
        specifically asked if the gun had been pointed to him and she stated he was only
        shown the gun.
    b.  Preliminary Hearing – Mr. Milton stated that the gun was pulled on him and was
        in my waistband.
    c.  Trial – Mr. Milton did not mention the gun when testifying to the events that
        occurred until the District Attorney asked the question "what did he do with the
        gun?'. Mr. Milton stated that the gun was in petitioners back not petitioners
        waistband. It was bought to the court's attention that Mr. Milton talked to
        officer's multiple times and never told them there was a gun involved
    d.  Declaration – Mr. Milton in the sworn statement states that there was never a
        gun involved.
3.  Placement of Defendant
    a.  911 call –
    b.  Preliminary Hearing – Mr. Milton stated that I was across the street, and I walked
        over to talk to the girl at the bus stop
    c.  Trial – Mr. Milton stated that I was seated to the right of him, not across the
        street.

**Supporting Documents:**

Witness Statement Declaration provided by Mr. Rafael Milton

**Ground 3**

<u>*Newly Discovered Evidence – Gun Enhancement*</u>

The Superior Court of California imposed a gun enhancement in my case, adding an additional
10 years to petitioners sentence. Mr. Rafael gave testimony to this case at minimum, on 4
different accounts, with all accounts depicting various scenarios ranging from a gun not being
present at all to a gun being brandished and pointed towards him. Petitioner would also like to
note there was no weapon recovered in this case.

As referenced in the 911 call that was placed on September 26, 2009, Mr. Rafael Milton was
asked if petitioner had a gun and his answer was, "He had a gun. He showed me that he had a
gun". He was asked if the gun was pointed at him and his reply was, "He just showed me, he
just".  This was the only mention of a gun during the conversation. There was never any claim
that a gun was pointed at Mr. Rafael Milton at any time, even when specifically asked by the
911 dispatcher. Moving forward to the preliminary hearing, Mr. Rafael Milton states that he
sees the back end of a gun after petitioner lifted up my shirt and says to me "You're not gonna
shoot me in broad daylight".

 Mr. Rafael Milton states that when petitioner lifted petitioners shirt (tank top) that was tucked
in the waistband of petitioners boxer shorts he could see the gun. He then proceeds to say that
petitioner pulled the gun out and put it to the right side of his head. Petitioner is right-handed.
Mr. Rafael Milton stated that petitioner had grabbed the phone with petitioners (dominant)
right hand and tried prying it from him while simultaneously pulling the gun from petitioner
back with the left hand, placing on the right side of his face. In trial, Mr. Rafael Milton admits to
speaking to police after the 911 call and never mentioning a gun being pulled out and pointed
toward him. He also stated that the gun was in petitioners back and not in the front, where he
stated it was initially when petitioner lifted petitioners shirt and showed it to him.

He described petitioner reaching with petitioners left hand over/under petitioners right arm to
petitioners back to retrieve the gun. The initial testimony given in trial was that petitioner
turned, and he was able to just see the back handle of the gun. Testimony given in both direct
and cross examination were more than slightly different. In the signed declaration provided by
Mr. Milton, he stated that petitioner did not have a gun and that the statements given by him
over the course of time were prepared with assistance from the LADAs office.

Petitioner is also challenging this enhancement based on the trial court imposing both a firearm and gang enhancement in connection with a single offense. Petitioner was given an additional 10 years for PC12022.53(B) a firearm enhancement and an additional 10 years for PC 186.22(B)(1)(C) a gang enhancement.

Petitioner was given 10 years for a gun, another 25yrs for having a gun, and 10 for the gang.


**Supporting Documents:**
Witness Statement Declaration provided by Rafael Milton

**Supporting Cases, rules, or other authority:**
People v. Rodriguez No. S159497 47 Cal. 4th 501 (Cal. 2009)
People v. Lopez No. F062740 (Cal. Ct. App. Aug. 22, 2012)
People v. Le No. C078358 (Cal. Ct. App. June. 20, 2018)
California Code PC 1170.1 (f)
California Code PC 654


**Ground 4**

_Newly Discovered Evidence – Gang Enhancement_

The Superior Court of California Imposed a gang enhancement in petitioner case, adding an additional 10 years to petitioners sentence.

In trial it was never proven that petitioner was with any gang member(s) at the time of the alleged commission of this crime. The entire trial was based on gang pictures taken out of petitioner phone and testimony, later recanted by Mr. Rafael Milton.

In the affidavit provided by Mr. Rafael Milton, he testifies to the fact that not only did petitioner not have a gun, but that petitioner did not "gang bang" on him. He never mentioned what gang petitioner was in. He never stated what hood petitioner threw up , and he never had any knowledge of the gang petitioner was a member of, so it's impossible to benefit or assist petitioner gang when it is unknown to the alleged victim. There was no evidence presented to the court to prove that the alleged crime was done for the benefit of a street gang. Under California law PC 186.22(b) prosecutors must prove that:

 1. Petitioner committed or attempted a crime for the benefit of, at the discretion of, or in association with a criminal street gang, and that:

2. Petitioner committed the crime with the intent to assist, further, or promote criminal gang-related conduct.

During trial it was never proven by prosecutors that any gang associates had knowledge of petitioner participation in the alleged crime, nor were there any intentions for petitioner to share any gains that could've been made during this alleged crime with them, so it's impossible to benefit or assist a gang when it's unknown to the alleged victim.

Petitioner is challenging this enhancement based on the trial court imposing 3 enhancements, 2 firearm enhancements, 1 for having a gun that was never found (25 years to life) and 1 for the 10-20-life law (10 years). Petitioner is additionally challenging this enhancement based on the trial court imposing both a firearm and gang enhancement in connection with a single offense.

**Supporting Documents:**
Witness Statement Declaration provided by Rafael Milton


**Ground 5**

*The Trial Court Imposed Illegal Enhancement*

Petitioner want to challenge the enhancements due to them being excessive and prohibited against law. Petitioner was given 10 years for a gun enhancement, 10 years for a gang enhancement, then on top of that petitioner was given another 25 years to life for petitioner allegedly having a gun which in essence made the crime a violent felony which is also the ultimate reason of the 3rd strike so technically I was given 2 gun enhancements due to a gun being alleged/mentioned in a single robbery, which is 35 years to life for a gun that was never found, then 5 years for a 667(a) enhancement, including the 5 years maximum petitioner can receive for the robbery. 55 years in total for basically a petty theft. Petitioner time was enhanced, and a 3rd strike was added for something petitioner was adjudicated for when petitioner was 16 and had no clue it would affect petition when petitioner was an adult. Petitioner was never afforded a jury trial during the adjudication petitioner time was enhanced for, and due to those facts, it shouldn't be a conviction.


**Supporting Documents:**
SB260/261 verbiage

**Supporting Cases, rules, or other authority:**
California Code PC 1170.1 (f)
California Code PC 654

**Ground 6**

_Police/Prosecutor Misconduct_

The District Attorney office violated petitioners rights in multiple instances. Both agencies
engaged in onerous misconduct. These actions included but were not limited to:

1. The prosecution improperly coaching Mr. Milton
2. The prosecution forcefully pushing Mr. Milton to testify, even after he declined.

The District Attorney violated my due process and constitutional rights by tainting,
manipulation, intimidation, and forcing the witness to make false statements to achieve a
personal accomplishment, as well as so that in Federal they would see it as a Federal violation.

Mr. Milton has recanted his statement.

**Supporting Documents:**
Witness Statement Declaration provided by Mr. Rafael Milton.


**Ground 7**
**First rebuttal… ineffective assistance of counsel and violation on petitioners 6th
amendment right to effective counsel on ground 1.**

**Strickland v. Washington,** 466 U.S. 668, was a landmark Supreme Court case that established
the standard for determining when a criminal defendant's Sixth Amendment right to counsel is
violated by that counsel's inadequate performance. Also in essence to other facts of ineffective
counsel , Washington, 466 U.S. 668 (1984) states the appropriate standard for ineffective
assistance of counsel requires both that the defense attorney was objectively deficient and that
there was a reasonable probability that a competent attorney would have led to a different
outcome , and in petitioner case petitioner proved ineffective assistant of counsel to the core in
claim 1 of the newly discovered evidence of ineffective assistance of counsel , petitioner stated
in petitioner 2009 proceedings.

In 2011 petitioner wrote several correspondences to the bar association about William
McKinney ineffectiveness that Coincidentally took place years later with other innocent people
that William McKinney swindled out of currency , petitioner believed to treat his health
conditions that ultimately lead to his disbarment and eventually killed defense attorney William
McKinney, which prove petitioner complaint did have basic merit of prima facie factors**.**

**Latin expression prima facie means "at first sight", "at first view", or "based on first
impression". In both civil and criminal law, the term is used to denote that , upon initial
examination , a legal claim has sufficient evidence to proceed to trial or judgment…Patrick E
Connolly at first sight ,at first view or based on first impression was prejudice towards
petitioner due to him being against gangs and gangs violence ,which automatically VIOLATED
petitioner rights to due process and a fair hearing based on Patrick E Connolly prejudice
towards petitioner.**

Common since of any sane / competent person in society will understand that petitioner will be
pulled over by police 10 different times a day if petitioner had a gun tucked inside petitioner
waistband with petitioner tank top tucked inside petitioner boxers with a firearm conspicuously
brandished for the world to see tucked in petitioner waistband of his shorts. Those are facts
that can't be genuinely disputed which definitely meets the prima facie criteria to a judge that
isn't bias / prejudice like Patrick E Connolly towards petitioner your honor.

 Not once did Rafael Milton state he was in fear for his life at any time , which in essence there
was no force or fear used to actually constitute a robbery , due to the story being fabricated
with false accusations , and should prove this was the conspiracy theory it was set up to be
behind closed doors obstructing the due course of justice by coming to a meeting of minds
between the district attorney persuasive manipulating malicious twist to force Rafael Milton to
lie for her own personal gain, Eleanor J Hunter used power of authority as a judge to collude
the conspiracy by manipulating jury instructions and allowing evidence illegally throughout trial
that was detrimental to petitioner that caused petitioner to receive a frivolous illegal life
sentence.

Police at 108th who falsified documents that blatantly prejudice petitioner, tampered with the
witness by intimidation , they also continued to force Rafael Milton to come to court when he
obviously didn't want to…moreover in essence violated petitioner due process to a fair and just
trial. Gang experts colluding the conspiracy by jumping on the stand under oath habitually
perjuring himself to sustain a gang enhancement on petitioner to taint the jury minds to
enhance petitioner sentence to life in prison under their blatant deliberate Indifference.

Deceased William McKinney coming to a meeting of minds to obstruct the due course of justice
to seek and illegal ulterior motive that violated petitioner rights to be free from being treated
cruel and unusual. Rafael Milton told petitioner private investigator in details about this alleged
robbery and factual conspiracy that's very deliberate Indifferent towards petitioner
constitutional rights.

 Rafael Milton was threatened by the district attorney with jail time if he didn't come to court
or commit perjury to help their collusive ulterior motives he states in his notarized affidavit ,
which blatantly obstruct the due course of justice. Due Process / illegally being sentenced is
prima facie at it's finest if it directly violates United States Constitution , so to speak.

The complaint speaks for itself your honor. Rafael Milton stated that petitioner district attorney stated to him that petitioner attorney told the district attorney petitioner defense strategy that defense attorney William McKinney stated he can get petitioner out with if presented right in court or the DA worked with us.

In **Mooney v. Holohan**, 294 U.S. 103 (1935), the Court established the rule that the knowing use by a state prosecutor of perjured testimony to obtain a conviction and the deliberate suppression of evidence that would have impeached and refuted the testimony constitutes a denial of due process. Which is exactly what happened in petitioners criminal proceedings. Moreover he conspired against petitioner with ulterior motives in collaboration with the District Attorney.

On page C-2 of my transcripts, One District Attorney stated to petitioner after petitioner denied the 20 year deal that wasn't a deal and due to petitioner innocence , petitioner refused the offer that was offered to petitioner by the district attorney, and he stated maliciously " ok since you won't take the deal I guess you'll get life then" he proceeded to talk in court which was blatant prejudice and prosecutor misconduct... no one in court seemed to notice or say anything about the comments the district attorney made in the proceedings. Everything petitioner pointed out , far as the ineffective deficiencies to petitioner criminal proceedings in 2009 all state facts and for sure if deficiencies were properly and diligently pursued in court petitioner would've been released on these facts below once again and proves prosecutorial misconduct , due to the facts , Prima facie negligence is when a person or entity fails to use the care that a reasonably prudent and careful person or entity would use under similar circumstances , and in petitioner case this is what prosecutors and Patrick E Connolly exuded in his decisions in petitioner hearing and prosecutor throughout petitioner trial towards the court continued to prejudice petitioner case vicariously through bias retaliatory methods towards petitioner. Facts below will prove just that your honor.

1. Defense counsel failed to return trial documents to petitioner.

2. Defense counsel failed to obtain, or to attempt to obtain, video footage from the Metro and/or MTA which would have exonerated petitioner.

3. Defense counsel failed to obtain video footage of the actual scene from MTA (Metropolitan Transportation Authority). Failed to obtain documentation of policies outlining the preservation of MTA video. Video of this incident would have had a great impact on the outcome of the case, had it been retrieved and used in trial, and would have exonerated petitioner.

4. Defense counsel failed to subpoena petitioner phone records.

5. Defense counsel failed to assert the fact that petitioner had money on him demonstrated that he did not need to rob anyone.

6. Defense counsel failed to call witnesses that were favorable in petitioner defense (Ashley Greene and Leve Ross), petitioner requested for these witnesses to be called to testify, however, there was no follow through from Mr. McKinney. The one witness that testified, later signed a notarized statement.

7. Defense counsel failed to provide evidence that could have been favorable to the outcome of the case, ie. Phone records (proving petitioner had a phone and did not need to steal one), police inventory (to show petitioner was in possession of money and did not need to commit the crime of robbery for purposes of financial gain, etc.)

8. Defense counsel failed to conduct himself in a professional manner and act diligently during trail and the sentencing phase. Petitioner was not bought in to participate in a Romero hearing to challenge the juvenile strike. In essence, he failed to request a Romero Hearing, and pressured petitioner into not challenging a juvenile adjudication, that was used for the purposed of sentencing, adding an additional strike and sentencing petitioner under the three strikes law.

9. Defense counsel failed to challenge the prosecution's assertation that petitioner had a gun in petitioners waistband, which would not have been possible in circumstances where petitioner was wearing a white tank top, blue boxers, and blue jean shorts. It would have been unlikely and improbable for someone in that outfit to have a gun in their waistband as it would have been visible.

10. Defense counsel failed to object or challenge prosecutions allegations and testimony that were blatantly inconsistent from all phases of the case, including but not limited to the 911 call, police interrogation, preliminary hearing, and trial. He failed to take advantage of the fact that Mr. Milton initially told police that petitioner had simply displayed a gun and he did not draw it or point it at Mr. Milton, prior to changing his story and testifying that petitioner had in fact pointed it at his head.

11. Defense counsel failed to properly investigate and review petitioner case before presenting in trial.

12. Defense counsel only visited petitioner once in jail and was thus, unable to formulate a proper defense strategy.

13. Defense counsel did not waive time and proceeded to trial within one month of taking petitioner case and in circumstances where he was woefully unprepared for trial.

Defense counsels ineffectiveness constitutionally violated petitioner due process right to a fair trial and if diligence was a factor and petitioner counsel wasn't ineffective petitioner would have had a different outcome in petitioner trail.

Attorney William Lawrence McKinney was found to have a history/pattern of behavior that
ultimately concluded with disbarment.

Every element of petitioner ground 1 are facts that would've exonerated petitioner case.

William Lawrence McKinney was admitted to the bar December 18, 1975. In between the time
of admission and January 4, 2019, Mr. McKinney's public records consisted of, but was not
limited to the following.

On January 9, 2003, in case no. 01-O-03615, Mr. McKinney was privately reproved for a single
count of failure to cooperate with the State Bar's investigation.

March 2003 (est.), William Lawrence McKinney represented Kellye Brothers in a preliminary
hearing. Brothers had decided that she would not be able to afford Mr. McKinney's services for
any matters after that hearing. Mr. McKinney accepted money from Brothers family members
on two separate occasions for a total amount of $1500. This was an amount that would cover
post-conviction services/appeals. Mr. McKinney did not provide services and informed family
members that he found no issues to appeal in Brothers case, and would not proceed with an
appeal, but never conferred with Brothers. Upon release Brothers requested money back that
had been paid to Mr. McKinney for the post-conviction services. Mr. McKinney did not return
funds and the State Bar opened an investigation, case no. 06-0-10709. Mr. McKinney was not
responsive and was found to have violated Business & Professions Code section 6068(i).

November 14, 2006 (effective date), in case no. 06-O-10709, Mr. McKinney was publicly
reproved for failing to communicate to his client that he had decided to not pursue an appeal
on her behalf, and failing to cooperate with the State Bar's Investigation. (Brothers Case)

January 16, 2011, Case No. 14-O-01186, William Lawrence McKinney was paid an advanced fee
of $6,252.50 (partial payment of $7,500 for preparation and filing of a write of habeas corpus
by parents of Theodore Snyder, Jr. Mr. McKinney did not consult with or obtain permission of
Mr. Snyder and had no communications with him. On November 17, 2014, Mr. McKinney
replied to the State Bar investigating Mr. McKinney's
acceptance of money on behalf of a client in which he did not enter into an agreement with.
Mr. McKinney's response, was that he had not communicated with Mr. Snyder because he had
not received a full $7,500. The State Bar found that Mr. McKinney willfully violated Rules of
Professional Conducted, rule 3-310(F).

March 22, 2016, Notice of disciplinary charges were filed in regards to Case No. 15-O-13944,
the State Bar of California found William Lawrence McKinney to be in willful violation of Rules
of Professional Conduct, rule 3-700(D)(1), Business and Professions Code, section 6068(m) (2
counts), and California Rules of Court, rule 9.20. It was found that on or about August 2013, Mr.
McKinney was terminated as retained counsel and failed to release promptly, his clients, Brent
Frosts requests for his files in September 2013. Mr. McKinney also failed to respond to two
written status inquiries requested by Mr. Frost on December 14, 2014 and February 5, 2015.

Furthermore, Mr. McKinney failed to keep Mr. Frost informed of significant developments in his case, and failing to inform him that he had "lost" the clients files.

June 15, 2013, Case. No. 14-O-03498, William Lawrence McKinney, received an advance fee in the amount of $5000, for preparation and filing of a writ of habeas corpus from Ida Dupree, for her son James Carter. In September 2013, Dupree complained to Mr. McKinney about having made no contact with her son or initiating any work on his case. She asked for her money back. Mr. McKinney asked if he could meet with Ms. Dupree at her home. In October, 2013, Mr. McKinney met with Ms. Dupree and she agreed to allow Mr. McKinney to continue

Representation, with the agreement that the petition for her son would be filed by April 2014. In April 2014, Ms. Dupree contacted Mr. McKinney and advised that he had not completed any of the work because a fee payment listed in the agreement had not been paid. A complaint was filed with the State bar. On September 8, 2014, in response to a communication from the State Bar, who had initiated an investigation, Mr. McKinney stated, "Mr. Carter asked from an accounting on a letter dated 8/14/2014….. I have not communicated with him since he is not my client……." Mr. McKinney did not communicate with Mr. Carter or Ms. Dupree regarding any investigation, Legal analysis, or status to the progress of the writ petition, at any time between his employment on June 15, 2013 and February 18, 2015. Mr. McKinney was found to have willfully violated Rules of Professional Conduct, rule 3-310(F) and rule 3-110(A), and Business and Professions Code, section 6068(m).

March 19, 2015, A suspension order was **GRANTED**. Mr. McKinney was suspended from the practice of law for the first 90 days of his probation period. Mr. McKinney received a two-year suspension which was stayed and was placed on 3 years' probation.

June 23, 2017, William Lawrence McKinney was disbarred by the Supreme Court of California.

January 4, 2019, William Lawrence McKinney was disbarred from the practice of law by the Supreme Court of Tennessee which was retroactive to July ,13, 2017

 Civil or criminal case, evidence that existed at the time of trial but that could not have been discovered with reasonable diligence prior to a verdict or court judgment. If the party was excusably ignorant of the evidence, it may be the basis for a new trial motion. The affidavit fit the criteria in this matter on this particular habeas petition that clearly establish A prima facie case. A prima facie case is the establishment of a legally required rebuttable presumption. A prima facie case is a cause of action or defense that is sufficiently established by a party's evidence to justify a verdict in his or her favor, provided such evidence is not rebutted by the other party. Not once did the prosecutor cause of action/defense wasn't sufficiently established by the prosecutor to justify the verdict in petitioner case at hand. All ineffectiveness and the prima facie showing of Williams McKinney errors was a demonstrable reality. See… in re cox (2003)

**Ground 8. Due Process…recanted statement**

**In the seminal case of Brady v. Maryland,** 373 U.S. 83 (1963), the U.S. Supreme Court held that a prosecutor's suppression of material evidence favorable to an accused upon request violates due process. This is exactly what took place in petitioner case. Petitioner asked his public defender and judge in arraignment to get all video footage from metro also MTA policy's to scrutinize the validity of the accusations public defender 's and William McKinney about camera footage being erased , to prove petitioner innocence.

Due to the facts that there was video evidence petitioner would have been exonerated. Petitioner 809.00$ wasn't accepted as evidence due to the judge stating defense attorney never admitted it in discovery for it to be admissible evidence of some sort which basically void the admission of evidence due to the conspiracy petitioner continuously explained of the second cell phone petitioner had on his person at the time of arrest on October 1, 2009.

Witnesses weren't even mentioned by defense attorney at trial.  Defense attorney stated several times that this wasn't a case that because petitioner was a gang member is the reason the crime was committed. The prosecutor manipulated the whole trial into a gang show to taint the jury to ultimately give petitioner life , due to the facts the only reason petitioner was sentenced to life whether Patrick E Connolly believes petitioner toggled the phone or not , it was because of the illegal gang enhancement that was illegal added to petitioner case to manipulatively sustain a life sentence due to his ( District Attorney) ulterior motives.

The first gang detective was taken off petitioner case in preliminary hearing because he jumped on stand acting as though he knew petitioner just as the officers of the gang division on petitioner case who stated he knew petitioner stating we had consensual encounters petitioner has no recollection of due to being incarcerated most of petitioner life to ever have such encounters of the detective hearsay , Eleanor J Hunter allowed , with no factual evidence to prove his perjury.

 If a pitchess motion was taken by petitioner lawyer on both gang detectives who testified in petitioner case it'll prove petitioner was in jail while these officers were in the field to prove they perjured themselves on the stand by fabricating evidence. It'll prove they never wrote FI cards or have any substantial evidence of ever writing a FI card on petitioner to prove ever having any contact with both officers and will prove a blatant conspiracy of obstructing the due course of justice to give petitioner a gang enhancement to ultimately give petitioner life in prison. A prosecutor will need strong evidence that supports each element of the crime in order to establish a prima facie case successfully. Prosecution never accumulated strong evidence to support every element of petitioner case… prosecutor must also prove a defendant's guilt as to each element beyond a reasonable doubt to win a conviction. These factors wasn't fulfilled throughout petitioner whole trial , which in essence violate petitioner constitutional rights to due process , and being treated cruel and unusual.

## Ground 9.  Prosecutorial Misconduct

In the newly discovered evidence of the prosecutor misconduct from Rafael Milton stated in
facts it was a conspiracy between petitioner lawyer and the district attorney of the court by
obstructing the due course of justice by falsifying evidence, tampering with the witness, And
witness intimidation , which is a blatant act of misconduct. **See Rice v. State Bar [L.A. No.
31441. Supreme Court of California. January 25, 1982.] L. FORREST PRICE, Petitioner, v. THE
STATE BAR OF CALIFORNIA.**

## Ground 10.   Judicial misconduct

**Judge Patrick E Connolly** stated in the minutes order that a habeas petition must allege with
particularly the facts upon which relief is sought and includes copies of reasonably available
documents supporting the claim. Vague or conclusory allegations made without any
explanation of the basis for the allegations do not warrant relief. When there obviously nothing
vague or conclusory to the grounds petitioner raised with an affidavit attached with facts that
states a prima facie case. Patrick E Connolly violated petitioner due process right , and
petitioner 6th amendment right to counsel at petitioner hearing which open petitioner case to
all Gascon directives which was ignored by Patrick E Connolly to avoid immediately releasing
petitioner. He also goes to say that there's no legal basis for relief , and changes in law aren't
newly discovered. 654 verbiage isn't newly discovered , and neither is 1170.1 (f) that states
when two or more enhancements may be imposed for being armed with or using a dangerous
or deadly weapon or a firearm in the commission of a single offense, only the greatest of those
enhancements shall be imposed for that offense. Which should have ultimately led petitioner
to freedom due to those facts of a prima facie case. He also states in his response that there's
no resentencing options in the superior court.

In facts it states: A judge may in fact modify your sentence if their was a clerical error. Yes. A
court generally maintains power to correct an incorrect sentence. This means that if the
sentence was brought about by a clerical error, the court can simply amend the abstract of
judgment to reflect the correct sentence. Also a prisoner in custody under sentence of a court
established by Act of Congress claiming the right to be released upon the ground that the
sentence was imposed in violation of the Constitution or laws of the United States, or that the
court was without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may move the
court which imposed the sentence to vacate, set aside or correct the sentence. Under federal
rules of appellate procedure. Which proves Patrick E Connolly has no respect for the law and
feels he's above it , due to the facts. See....**United States v. Hernandez-Rodriguez,** 443 F.3d 138
(1st Cir. 2006)

The trial court abused its discretion in denying the defendant a new trial. The defendant's co-defendant provided an affidavit that exculpated the defendant with evidence that was not available to the defendant at trial. The affidavit was more than a simple denial of the defendant's participation. Even viewed, as the court requires, with "great skepticism" this affidavit meaningfully demonstrated that the defendant was wrongfully convicted. And so does petitioner claims**.**

 **United States v. Piazza**¸ 647 F.3d 559 (5th Cir. 2011) The trial court acted within its discretion in granting the defendant's motion for new trial based on the discovery of newly discovered evidence. The evidence was unknown to the defense; the failure to discovery the evidence earlier was not due to a lack of diligence; the evidence was not merely cumulative or impeaching; and the evidence was material and would probably produce an acquittal. Also see **in re Lindley 1947 29 cal 2nd 709.** Stating that new discovered evidence does not warrant relief unless it is of such character as will completely undermine the entire structure of the case upon which the prosecution was based.

Because Patrick E Connolly robbery conviction lacked element required for California robbery conviction, PATRICK E  / ELEANOR J HUNTER BOTH erred in counting priors to apply three strikes law and enhancements. Patrick E Connolly was prejudice towards petitioner and his denial proves those specific facts. Petitioner due process rights were violated under the 6th amendment right to counsel for petitioner hearing for release on 6-13-23 by Patrick E Connolly conniving tactics. The petition seems to be **GRANTED.** Due to Patrick personal dislike towards petitioner he blatantly acted outside the scope of his judicial function. He also manipulatively exuded an illegal act that harmed petitioner.

(Illegal enhancements)

**Penal code 654 / 1170.1 (f) also having a gang enhancement and a gun enhancement both together prohibits the sentence petitioner was given in 2009. Once again petitioner was given 4 enhancements for one crime.**

1. **10yr Enhancement for a gun.**
2. **25yr to life for supposedly having a gun in the commission of a crime.**
3. **10yr gang enhancement when petitioner was alone.**
4. **5yr 667.(a) enhancement**
5. **5 yrs. for the actual alleged robbery**

**People v. Rodriguez No. S159497 47 Cal. 4th 501 (Cal. 2009)**
**People v. Lopez No. F062740 (Cal. Ct. App. Aug. 22, 2012)**
**people v. Le No. C078358 (Cal. Ct. App. June. 20, 2018)**
**California Code PC 1170.1 (f)**
**California Code PC 654**

**All proves facts that petitioner has been in jail for 14yrs for a crime petitioner didn't
commit…also not once did Patrick E Connolly mention anything about the gang / gun
enhancement prohibition to being given a gang and gun enhancement at the same time ,
neither did he mention the 4 illegal enhancements due to the facts** his prejudice towards
petitioner is authentic.

Petitioner believes Patrick E Connolly never looked at petitioner file and believes why petitioner
wife wasn't immediately given petitioner minute order when she requested it from the clerk of
the court the day of , due to prejudgment on petitioner ignoring the prima facie factors of
petitioner habeas petition. Also petitioner believes his decisions were influenced by his retired
father Pat Connolly. Due to the FACTS , Pat Connolly is the father of Los Angeles Deputy District
Attorney Patrick E. Connolly, 43, who is listed on the ballot in the June 3 primary election under
the same shortened name his father used. The candidate Pat Connolly, like his father, is a
fighter, though in the son's case, it's in the legal arena rather than the ring. As a deputy district
attorney, he slugs hard in court; he's not known to hit below the belt.

The controversy surrounding him stems not from what he does in courtrooms, but from his
conduct outside of court, his colleagues sometimes being the recipients of his verbal blows. He
has a reputation for picking fights. "There may be personality clashes," Connolly readily
acknowledges. Many, on the other hand,  find him personable and delightful. He has strong
supporters and strong detractors. As to that proposition, Connolly responds: "No doubt about
it." Qualities no one seems to attribute to him are being a wimp, a liar…or a diplomat. It is not
in doubt that he has a knack for convincing juries and gaining convictions. His performance
evaluations through the years have been exemplary. One person in office management opines
that despite his having brought in "notable victories," Connolly is "not an all-around good
[deputy] DA," observing that he "does have a temper" which "goes with kind of a pugnacious
style. "Is he pugnacious? "I'd like to think so," Connolly responds. Is that good? " I think so.
"Why? "Well, I take 'pugnacious' to be that I go forward, undaunted, against great odds. "With
respect to his controversial image within the office, Connolly says:" I think I've got very strong
opinions and I think when I'm asked, I'm honest about them and I think that causes a lot of
people, especially within the setting of the bureaucracy that we have, some issues." Petitioner
appreciate the time and consideration. Cordially Sharrod Moten.

# BROWN INVESTIGATIONS

*310 N. Indian Hill Blvd. #242*
*Claremont, CA 91711*
*(909) 964-8660*
*BRWNPI@HOTMAIL.COM*
PI License #17003

## WITNESS STATEMENT DECLARATION

**Declaration of:**
Rafael Milton
461 S Calle El Segundo Apt #807
Palm Springs, CA 92262
DOB: 06/01/1986
(323) 705-0162

**Date of Incident:**
September 26, 2009

Client/Defendant: Sharrod Brucewa Moten
DOB: 10/23/1985
Case Number: TA108752

## STATEMENT

On Sunday April 19, 2020 at approximately 1:30 pm, Investigator Gerard Brown interviewed Rafael Milton in person in the city of Palm Springs, CA. Mr. Milton stated the following;

Investigator Brown interviewed Mr. Rafael Milton regarding the incident which occurred on September 26, 2009. Mr. Milton stated that he remembered the incident that happened at the bus stop on the corner of Avalon and 118th street in Los Angeles County.

I was sitting at the bus stop and I noticed a young man (later identified as Sharrod Brucewa Moten) walking from across the street. Since I didn't know him, I didn't pay him any attention but I did notice that he stopped at the bus stop and began talking with a young lady (later identified as Ashly Greene) who was sitting at another bench adjacent to where I was. She was close enough to observe and hear the entire incident. When I looked up again, I made eye contact with the young man (Mr. Moten) who had crossed the street. He spoke and I spoke back, and I then put my head back down and went into my cellular phone (Sidekick LS). The next thing I noticed was Mr. Moten walking up to me asking to use my phone and I denied him. He also asked where was I from and I told him Louisiana. He then asked to use my phone again and again, then he reached with his right hand and grabbed my phone and we then began toggling for the phone. It's been so long, that I can't remember exactly what he said, but I eventually let go of my phone. I then sized him up, so could I remember how he looked. Shortly after this happened my bus came. I then got on the bus and used a random passengers phone to call the Police approximately 10 minutes after the incident occurred. By the time I

arrived at my Mom's house (a house on 30th St and Avalon - I don't remember the exact address), the LAPD were already there. I explained to the Los Angeles Police Officers (both Latino but I don't remember their names) what happened with my phone and they told me they would call me back in two days. After I explained the incident and gave a description of the person, one of the Cops said they knew who he (Mr. Moten) was.

Two days later, I received a call from the Los Angeles Police Department to come down to the station and speak with the Detective who was working the case at the 77th Street Division. They led me to the back, where a Detective (don't remember his name) showed me my phone and asked me if it were mine. I told him it was and asked if I could have it. The Detective told me I couldn't have it back at that time. They then uploaded the content of my phone to a computer because they said they needed to verify that it was my phone. When they brought up the pictures, they were all Mr. Moten's pictures and all of mine were deleted. I asked again if I could have my phone back and that is when the Detective asked me if I wanted to press charges. I told them that it wasn't that big of a deal to me. I just wanted my phone and he (Mr. Moten) could go about his business. The Detective told me I couldn't have my phone back because it was part of an investigation. Which, I wasted my time going out to the Police station because I lived in San Bernardino by this time and rode the bus out to LA to the Police station.

Shortly after, I started receiving phone calls from the Detective that I had to come to court. I denied (not wanting to go to court) so many times that I couldn't remember. Several days passed and I received another call from the Police stating that they want to meet up again. So I go back to LA again from San Bernardino. When I met with the same Detective on this day, everything had changed and it was no longer about the phone it was all about Mr. Moten. I was told he had 55 years pending on him and he had other charges for this and that and the other. I was also told that he has a criminal record and I had to testify against him, that they would subpoena me. They told me I would go to jail if I didn't testify. I again told the Detective that I didn't want to press charges or anything else, I just wanted my phone back. The Detective kept going back and forth with me about Mr. Moten's criminal history, and stated that he had gone back and forth to jail all of his life, and he just got out of jail three months ago which I didn't care about. I didn't want to deal with any of this. After this day, I went back home and about three weeks later, I received a subpoena to appear in court. I called the Detective and he told me that I had to go to court and if I did not by the third subpoena, I would be locked up. He told me then that a DA would be contacting me. I was very young and I felt that I was being threatened by the Detective. He told me I had no choice but to comply with what they wanted.

By the time I received the 2nd subpoena I started receiving calls from a female Los Angeles District Attorney. I told her the same thing I initially told the Police. She eventually called me in for a meeting about a week later. She went into details about Mr. Moten's criminal past telling me things I feel I should not have been told. She ran down his entire life plan. She also stated that he was going to do 55 years in prison and she also told me he had kids, which jacked me up even more. She told me that his Attorney during the trial would say that we knew one another and that I owed him money, or that I was selling him drugs. I said but none of that is true. But she said that is how his Lawyer was going to come at me.

During the trial that is how it went down, his Attorney attacked my character saying that I owed him money and that I was selling him drugs, which none of it was true. I told his Attorney that I had never saw him before that day and he had my sidekick because he took it from me. During the incident he never gang banged on me, the Police Detectives told me he was gang affiliated. I was from Louisiana, I didn't know anything about the gangs in Los Angeles.

I tried to avoid testifying, but she continued to call me and said that if I didn't testify I would be in jail right next to him. She said when I come in and testify, I will be able to go home but he (Mr. Moten) will be doing 55 years on top of what he did to me, because they don't need him on the street. When he robbed me (Mr. Moten) I didn't see a bad guy, I just saw a guy who got caught up in a lifestyle, the same lifestyle that my parents got caught up in. On the day Mr. Moten was sentenced, I wanted to go and speak, but the DA would not allow me to. I wanted to say that he was a father and his kids needed him and this was no reason to send him to jail over a cell phone for 55 years.

Being a black man, I didn't want to see another Black man do a bunch of time over a cell phone, especially since they had my phone. All I wanted was my phone back. I thought that if I didn't want to press charges, then they couldn't do anything to him and he would go free. We all make mistakes, and it was wrong how they made me do him, when they knew how I felt about not wanting to press charges and them telling me he had just gotten out of jail. They stripped me of my manhood, of my pride and stripped me of who I was as a young man. The Detective told me he was facing 55 years for robbing other people and in my eyes that wasn't for me to know.  They told me what to say and how things were going to go. And if I didn't go along with it, then I would be locked up.

Ten years later after this, I am still having nightmares about this. I believe the Police and the DA spun this case and made a story of how they wanted it to go down. I felt I had no choice but to go along with what they wanted because they said they would throw a case on me. Still to this day I'm very nervous and scared whenever I see any Police Officers.

Investigator Brown asked Mr. Milton if the DA wanted him to testify to more things than what occurred and Mr. Milton stated that she wanted him to testify to things like Mr. Moten pointing a gun at him and threatening him during the incident. To which Mr. Milton stated that prior to trial the DA prepped him on what to say and he became frustrated while testifying because none of that occurred and he began to feel the burden of growing up knowing he lied and sent a man to prison for something that did not happen.

One day during my testimony I became frustrated on the stand and the DA could see I was becoming frustrated and pulled me to the side during a recess and said stick to the story I gave you because you don't want to be in jail with him. In hindsight, I believe that I was the only witness the DA had, they tried to say he had robbed three other people during the same week that the incident occurred with my cell phone and that those other so-called victims had already identified Mr. Moten. However, during the trial I was the only witness who testified. I

now believe that the DA had no other witness and that was the reason why they pressed me so hard.

Every day during the trial when I testified the LAPD Detectives came and picked me up from San Bernardino in a black unmarked vehicle and drove me to the Courthouse in LA. We didn't enter the courthouse from the front entrance but they took me into the building from the back. I felt like I was intimidated and forced to lie in my testimony during Mr. Moten's trial.

Prior to my testimony, they took me in a conference room and coached me on what to say, things that didn't make any since to me like for me to say he reached for the gun with his left hand, but I was like he was right handed, and they said that doesn't matter we just need for you to say he had a gun because we need these charges to stick. However, Mr. Moten did not have a gun or gang bang on me during the incident.

Investigator Brown asked Mr. Milton the following questions;

1) Did the LAPD Detectives or the District Attorney record your interview?
   A) I don't remember. I believe after my 2nd meeting with the detectives when they coached me on what to say, they then turned on a recorder. But honestly, it was so long ago I don't really remember.

2) Do you have a criminal record?
   A) No, I do not. Only traffic citations.

3) Has anyone besides myself contacted you regarding this case?
   A) No.

At the end of the interview Investigator Brown asked Mr. Milton if he could remember anything else regarding the incident and if he wished to add additional information to his statement. To which Mr. Milton stated that was all he remembered and did not have any other information to add.

*I declare under penalty of perjury under the laws of the State of California that I have personal knowledge of the facts stated above, and that the statement above is true and correct.*

Signature of Witness: _____     Date: _7-10-2020_
Rafael Milton

Qualified Manager/Investigator: _____     Date: _06-29-2020_
Gerard Brown

Witness: _____ 7-10-2020

Notary:

4

# California All-Purpose Certificate of Acknowledgment

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

County of _Riverside_     **s.s.**

On _July 10th 2020_ before me, _JACOB Alvin Lerma_,
<span style="font-size:smaller">Name of Notary Public, Title</span>

personally appeared _Rafael Daann Earn Milton_
<span style="font-size:smaller">Name of Signer (1)</span>

_Angela Renee Brown_
<span style="font-size:smaller">Name of Signer (2)</span>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Jacob Alun Lema_
<span style="font-size:smaller">Signature of Notary Public</span>

> **JACOB ALVIN LERMA**
> COMM. #2329190
> NOTARY PUBLIC ● CALIFORNIA
> RIVERSIDE COUNTY
> Commission Expires MAY 30, 2024

Seal

──────────── OPTIONAL INFORMATION ────────────

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _WITNOSS STATEMENT Declaration_

containing _4_ pages, and dated _7-10-2020_

The signer(s) capacity or authority is/are as:

- [x] Individual(s)
- [ ] Attorney-in-fact
- [ ] Corporate Officer(s) _____
  <span style="font-size:smaller">Title(s)</span>
- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____
<span style="font-size:smaller">Name(s) of Person(s) Entity(ies) Signer is Representing</span>

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:

- [ ] form(s) of identification  [ ] credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____  Entry # _____

Notary contact: _____

Other

- [ ] Additional Signer  [ ] Signer(s) Thumbprints(s)
- [ ] _____

© 2009-2015 Notary Learning Center - All Rights Reserved     You can purchase copies of this form from our web site at www.TheNotarysStore.com.

# BROWN INVESTIGATIONS

*310 N. Indian Hill Blvd. #242*
*Claremont, CA 91711*
*(909) 964-8660*
*BRWNPI@HOTMAIL.COM*
PI License #17003

## WITNESS STATEMENT DECLARATION

**Declaration of:**
Ashly Greene
10108 S Figueroa Street Apt #3
Los Angeles, CA 90003
DOB: 08/02/1993
(843) 751-7270

**Date of Incident:**
September 26, 2009

Client/Defendant: Sharrod Brucewa Moten
DOB: 10/23/1985
Case Number: TA108752

## STATEMENT

On Saturday April 11, 2020 at approximately 4:30 pm, Investigator Gerard Brown interviewed
Ashly Greene via phone (due to COVID-19 Pandemic). Ms. Greene stated the following;

At the time I was 16 years old and the best memory was that I arrived to the bus stop and sat
down. There were other people unknown to me also at the bus stop. When I sat down, I was
sitting next to Mr. Moten and there was another male slightly known to me (later identified as
Rafael Milton) who was seated adjacent to us a few feet away. I knew Mr. Moten by face from
seeing him around the neighborhood, but did not know him by name. During the time I was at
the bus stop, I was on my phone and carrying on a chatting conversation with Mr. Moten. A few
minutes later, Mr. Moten got up from where we were seated and walked over a few feet to
where Mr. Milton was seated. I did not hear the conversation that began between Mr. Moten
and Mr. Milton because I was still talking on my phone. I later glanced in their direction and saw
Mr. Moten extend his arm and reach for a phone from Mr. Milton. I did not see or hear Mr.
Moten threaten him or physically take the phone from Mr. Milton. I really wasn't paying
attention to what they were saying, but I did not at any time see Mr. Moten brandish a gun or
physically touch or attack Mr. Milton. About five minutes later the bus came and I got on the

bus by myself and went home.  Mr. Moten and Mr. Milton stayed at the bus stop.

Investigator Brown asked Ms. Greene the following questions;

1) Did the LAPD ever interview you regarding the incident?

A) No, I was never questioned by Police nor did I go to court. I got on my bus after the incident and never knew the Police were involved until I heard about it later on from the streets.

2) What is the reason that you are coming forward now?

A) An innocent person is being held in Prison for something he did not do. Mr. Milton willingly gave Mr. Moten his phone without force. This was an incident that never should have involved the Police, let alone someone going to Prison over.

At the end of the interview Investigator Brown asked Ms. Greene if she could remember anything else regarding the incident and if she wished to add additional information to her statement. To which Ms. Greene stated that was all she remembered and did not have any other information to add.

*I declare under penalty of perjury under the laws of the State of California that I have personal knowledge of the facts stated above, and that the statement above is true and correct.*

**Signature of Witness:** _____     Date: 06/10/20
**Ashly Greene**

**Qualified Manager/Investigator:** _____     Date: 06-10-2020
**Gerard Brown**

**Notary:**     SEE ATTACHED
CALIFORNIA
ACKNOWLEGEMENT

2

# CALIFORNIA ALL- PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of **Los Angeles** _____ }

On **July 14, 2020** before me, **Lisa D. Smith - Notary Public**,
(Here insert name and title of the officer)

personally appeared **Gerard Brown** _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Signature_
Notary Public Signature

(Notary Public Seal)

**LISA D. SMITH**
**COMM. #2205686**
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires JUL. 16, 2021

---

## ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

**Witness Statement**
(Title or description of attached document)

**Declaration**
(Title or description of attached document continued)

Number of Pages **2** Document Date **7/14/2020**

**CAPACITY CLAIMED BY THE SIGNER**
☑ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
_This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law._

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-9865

**Attachment to the Petition for Writ of Habeas Corpus:**

**To the Honorable Court:**

Petitioner Sharrod Moten F-36382 respectfully submits this habeas corpus petition on the grounds that my conviction and sentence were the result of **illegal enhancements,** contrary to the dictates of **Penal Code sections 1172.75 and SB-483.** Furthermore, the petition demonstrates that these enhancements violate **Penal Code section 654 and 1170.1(f).** In light of recent jurisprudence, including **People v. Codinha (2023) 92 Cal.App.5th 976, People v. Vasquez (2022) 74 Cal.App.5th 1021, California v. Rhodius (2023), and People v. Guevara (2023), Petitioner asserts a prima facie case of a miscarriage of justice and undue prejudice, warranting immediate relief and release.**

**Statement of Facts:**

1. **Illegal Enhancements and Statutory Violations:**

Petitioner was convicted and subsequently sentenced with enhancements that violate **Penal Code sections 1172.75 and SB-483. These enhancements were improperly applied, resulting in a sentence that exceeds what is legally permissible.**

The California appellate courts, as seen in **People v. Codinha (2023) 92 Cal.App.5th 976, have held that such enhancements must be scrutinized under the law's strict standards, ensuring no overreach or misapplication occurs.**

2. **Contrary to Penal Code Section 654:**

**Penal Code section 654 precludes multiple punishments for the same act or omission.** Petitioner's case involved enhancements that effectively punished me multiple times for the same conduct. This contravenes the statutory protections provided by **section 654, as underscored in People v. Vasquez (2022) 74 Cal.App.5th 1021.** The Vasquez court **reaffirmed that any enhancement must not result in duplicative punishment for a single act, a principle ignored in Petitioner's sentencing, your honor.**

3.  **Misapplication Under Penal Code Section 1170.1(f)-(g):**

Further compounding the injustice, **the sentencing enhancements were inconsistent with Penal Code section 1170.1(f)-(g),** which governs the imposition of subordinate terms and enhancements. **As articulated in California v. Rhodius (2023) and People v. Guevara (2023), the proper application of 1170.1(f) necessitates a balanced approach that was not observed in Petitioner's case.** The misapplication of this statute led to an unduly prejudicial and disproportionate sentence, your honor.

4.  **Prima Facie Case of Miscarriage of Justice:**

**The collective impact of these statutory violations results in a clear miscarriage of justice. Under the standard set forth in People v. Duvall, Petitioner has presented a prima facie case that warrants judicial intervention. The undue prejudice suffered is palpable, and the continued incarceration of Petitioner under these unlawful enhancements constitutes a grave injustice, your honor.**

**Order to Show Cause**:

**Given the aforementioned points and authorities, Petitioner urges this Honorable Court to issue an Order to Show Cause, compelling the Respondent to demonstrate why the conviction and sentence should not be vacated**. **The illegal enhancements, statutory misapplications, and resultant undue prejudice underscore a fundamental miscarriage of justice, your honor.**

**Petitioner demands immediate release based on the prima facie showings and the necessity to rectify the judicial errors that have unduly extended my incarceration, your honor.**

Respectfully submitted, Sharrod Moten Pro per  litigant.

**June, 19th 2024...**